SMITH vs. THE BOARD OF SUPERVISORS OF BARRON COUNTY.

APPEAL FROM COUNTY BOARD: PLEADING: EXECUTORY SALE OF TAX CERTIFICATES. *(1, 2) Pleading on appeal from county board. (4) Complaint construed liberally. (5) Contract of sale pleaded, held executory. (6) County treasurer not authorized to enter into executory contract of sale of tax certificates. (7) No cause of action against county for moneys advanced on such a sale.*

1. On appeal from an order of a county board of supervisors disallowing a claim against the county, where a formal complaint is filed in the circuit court, it is to be treated on demurrer like other complaints in that court.
2. Such a complaint is not bad, however, for failing to allege a *demand* upon the county; since the jurisdiction of the court over the action arises from the facts that plaintiff's claim was presented to and rejected by the

county board, and the court must take judicial notice of facts in the record necessary to its jurisdiction.

3. On demurrer to the complaint, a written stipulation of the parties not made to be used on such demurrer, cannot be considered.

4. The complaint avers that plaintiff entered into an agreement with the defendant board of county supervisors *through the county treasurer, defendant's duly authorized agent,* by which plaintiff was to buy certain tax certificates of the county, etc. *Held,* that, while good pleading required a more full and specific statement of the treasurer's authority, yet, under the present liberal rule in the construction of pleadings (in the absence of any motion to make the complaint more definite and certain), this general averment must be treated as sufficient.

5. It is alleged that, by the agreement with said treasurer, plaintiff purchased of defendant all the tax certificates belonging to the county, amounting on their face to $26,500, agreeing to pay therefor one-fourth of that sum; that, pursuant to said agreement, as part payment of the purchase money, he paid $200, at which time it was agreed between him and defendant that the remainder of the purchase money should be paid when the amount of such tax certificates should be definitely ascertained and due notice thereof given plaintiff; that, soon after such purchase, defendant refused to inform plaintiff of the amount as agreed, and refused to deliver any part of the certificates, but assigned and delivered them to other persons. The action is for the $200 so paid, and damages for breach of the contract. *Held,* that the contract was merely an *executory* one for the sale of the certificates.

6. In the absence of any action upon the subject by the county board, the county treasurer has authority to sell tax certificates of the county for the amount thereof with interest at twenty-five per cent.; but (by sec. 1, ch. 138, Laws of 1861) the board may "prescribe the terms of sale and the rate of interest chargeable by such treasurer on such certificates." *Held,* that this does not empower the board to authorize the county treasurer to sell *on credit,* or for anything else than *money,* or to enter into a mere *executory* contract of sale, or make a *conditional* sale; but only to determine the amount to be paid on the principal, less than the whole amount thereof, and the rate of interest to be paid, less than twenty-five per cent., and perhaps the number of certificates to be sold to one person.

7. The treasurer having no authority to enter into the executory contract alleged, his action did not in any manner bind the county; and he alone, *as an individual* (if any one), is liable to refund the $200 advanced by plaintiff.

[RYAN, C. J., dissents from the last proposition, holding that the money paid by plaintiff appears to have gone into the county treasury, and that he is entitled to recover it in this action.]

APPEAL from the Circuit Court for *Eau Claire* County.

In February, 1876, plaintiff presented to the board of supervisors of Barron county, a claim for $200 as cash paid by him to the county on a purchase of tax certificates, $75 for expenses incurred in such purchase, and $5,000 as damages for failure of the county to complete such sale. The claim having been rejected, he took an appeal to the circuit court; and the venue was changed to the circuit court for Eau Claire county. By order of that court, he filed therein a formal complaint, the essential averments of which, in respect to the alleged sale and the payment made by plaintiff, are stated in the opinion. The other averments relate to plaintiff's readiness and willingness at all times to perform, and various matters affecting the amount of damages. Defendant demurred to the complaint as not stating a cause of action; and plaintiff appealed from an order sustaining the demurrer.

For the appellant, a brief was filed by *F. J. & W. C. McLean*, and there was oral argument by *F. J. McLean*. They contended, 1. That the county had authority to enter into the contract in suit, not only by virtue of Tay. Stats., 430, §§ 143, 145, 147, but also by Tay. Stats., 291–2, § 2, subd. 3. 2. That the complaint was sufficient to apprise defendant of the nature of the claim; and that, in view of the facts that in such actions the original claim as presented to the board is regarded as the complaint, and that the formal pleadings were filed *instanter*, the strict rule sometimes applied to original pleadings should not be applied here. *Warner v. Supervisors*, 19 Wis., 614; *Tarbox v. Supervisors*, 34 id., 558.

For the respondent, a brief was filed by *Charles S. Taylor* as its attorney, with *Levi M. Vilas*, of counsel, and the cause was argued orally by *Mr. Vilas.* They contended, 1. That by sec. 1, ch. 138, Laws of 1861 (Tay. Stats., 430, § 145), it is made the duty of the county treasurer, in the absence of any order on the subject by the supervisors, to sell certificates of lands bid off to the county for taxes, to any person offering to pur-

chase at their face and interest at twenty-five per cent., with a *proviso* that the supervisors may by order prescribe the terms of sale and the rate of interest; and that, as the plaintiff claims under the *proviso*, the complaint should allege facts bringing his case within its terms, i. e., showing an order of the supervisors entered in their minutes prescribing the terms of sale and the rate of interest. 1 Chitty's Pl., 223; *McGlone v. Prosser*, 21 Wis., 273. The averment that the agreement was made with defendant "through the county treasurer of said county, *the defendant's duly authorized agent*," is merely an assertion that the county treasurer, *by virtue of his office*, was authorized to make the agreement, which is a false conclusion of law. 2. That the statute cited requires the supervisors to fix *some* rate of interest, and the contract here alleged was void because no interest was charged. 3. That the statute does not authorize a sale of the certificates either on *credit (Delafield v. Illinois*, 2 Hill, 159, affirming *S. C.*, in 8 Paige, 527), or by a mere *executory* contract.

Counsel on both sides discussed at length the question whether, if the contract here alleged was valid, the county was liable in damages for its treasurer's refusal to perform it.

ORTON, J. On the appeal, the circuit court having ordered formal pleadings to be made and the plaintiff having filed a formal complaint, it must be treated on demurrer as in other cases, and nothing considered except that which appears or is referred to within it. *Warner v. The Board of Supervisors of Outagamie Co.*, 19 Wis., 616; *Swineford v. Pomeroy*, 16 id., 553; *Tarbox v. Supervisors of Adams Co.*, 34 id., 558.

The written stipulation of the parties, in which appears a resolution of the board of supervisors authorizing the county treasurer to sell the tax certificates in question, not having been made to be used upon the demurrer, cannot properly be considered, and the complaint must therefore stand, so far as such authority is concerned, upon the allegation that " said plaintiff

entered into an agreement with said defendant, through the county treasurer, *the defendant's duly authorized agent*, by which the plaintiff purchased," etc.

To have set out this authority specially and fully would have been the better pleading; but we can not say that it was indispensable, if the above language can be construed as a sufficient general allegation of authority for which it was probably intended by the pleader; and by a liberal construction we think it may be so treated and understood; and the defendant's counsel might have moved that the complaint be made more definite and certain in this respect, if desired.

The learned counsel of the respondent objects to the complaint because it does not aver a demand before suit brought; but this proceeding by appeal from the rejection of the plaintiff's claim by the board of supervisors is somewhat anomalous, and the court must take judicial knowledge of the record sufficiently to show jurisdiction, which is conferred only by the presentation of his claim and its rejection by the board; so that a statement of such demand in the formal complaint is unnecessary.

Upon the argument, reference was made to the resolution of the board set out in the stipulation; but, as already intimated, such reference was improper, and the complaint must be treated as if it contained a resolution or order of the board of supervisors specifically authorizing the county treasurer to make the contract set up in the complaint.

This view of the case leaves the only question to be considered upon the demurrer in respect to the authority of the county treasurer to make the contract sued upon, whether the board of supervisors had the power to confer such authority upon the county treasurer.

The contract set out is, " that said plaintiff entered into an agreement with the defendant (the board of supervisors) through the county treasurer of said county, the defendant's duly authorized agent, by which the plaintiff purchased of

said defendant the entire amount of tax certificates belonging to said county of Barron, amounting to the sum of twenty-six thousand five hundred dollars or thereabouts, at the face of said certificates, plaintiff agreeing to pay therefor one-fourth or twenty-five per cent. of said sum; that said plaintiff paid, pursuant to said agreement, as part payment of the purchase money, the sum of two hundred dollars, at which time it was agreed between said plaintiff and said defendant, that the remainder of the purchase money should be paid when the definite amount of tax certificates should be ascertained and due notice thereof given said plaintiff; that soon after the purchase of said tax certificates by this plaintiff as aforesaid, the said defendant refused to inform this plaintiff as to the amount thereof as agreed, and further refused to deliver the said tax certificates or any part thereof to the plaintiff, but assigned and delivered all of the same to other persons."

The plaintiff demands the two hundred dollars so paid, and damages for the breach of this contract.

The contract set out, it is quite clear, is not a "bargain and sale," or an *executed* contract of sale, but an *executory* contract *to sell*, and for the payment of the consideration when the amount is determined, dependent upon the condition precedent of the ascertainment, assignment and delivery of the certificates *in futuro*, and with a payment, in advance, of a small part of the consideration to bind the bargain. It is a contract of sale, incomplete, uncertain and executory. The number and amount of the certificates, and the total amount of the consideration, were undetermined, and the certificates were *yet to be* assigned and delivered, which, under the statute and the decisions of this court, is the only evidence and muniment of title to tax certificates purchased from the county treasurer. A sale *executed* is where nothing remains to be done by either party to effect a complete transfer of the subject matter of the sale. Story on the Law of Sales, §§ 231, 232; *Benedict v. Field,* 16 N. Y., 597; *Straus v. Ross,* 25 Ind., 300; *Martin v. Hurlbut,*

9 Minn., 142; *Welsh v. Bell*, 32 Pa. St., 12; *Whitmore v. Alley*, 46 Me., 428; *Ganson v. Madigan*, 9 Wis., 146; *S. C.*, 15 id., 144; *Congar v. The Galena & Chi. U. R. R. Co.*, 17 id., 477. " It is a mere contract *to sell*, and executory and incomplete, where anything remains to be done to the goods for the purpose of ascertaining the price to be paid, as by weighing, measuring or testing them, or where the price is to depend upon the quantity or quality of the goods, or when some after act is to be done to complete the sale, such as a formal delivery or a bill of sale." Benj. on Sales, §§ 310, 319; *Macomber v. Parker*, 13 Pick., 175. The case of *Sewell v. Eaton*, 6 Wis., 490, does not conflict with this doctrine; for in that case the property, which consisted of lumber and timber, was near at hand, and, though not fully measured, was fully delivered by the express agreement of the parties, and a full delivery at the time was clearly intended.

By these principles this contract would be tested if tax certificates were merely personal property or choses in action; but as conveying a conditional interest in lands it is in every respect imperfect and executory. The authority of a county treasurer to sell tax certificates belonging to the county is specifically conferred by the statute, and is not derived from the board of supervisors, although his power to sell may be taken away by a proper order of such board; but without such order his power to sell is plenary, subject only to the terms of sale fixed by the statute, which are, the amount of such certificates, and interest thereon at the rate of twenty-five per cent. per annum, or to the terms as prescribed by an order of such board entered in its minutes.

The proviso in sec. 1, ch. 138, Laws of 1861, in relation to these *terms*, is: " provided further, that the board of supervisors may, by an order to be entered in their minutes, prescribe the terms of sale and the rate of interest chargeable by such treasurer on such certificates."

It may be a little difficult to ascertain the exact meaning of

this language; but we think it more consistent with the first part of the section, and more reasonable, and according to the evident legislative intention, to hold that the word "*terms*," here used, refers solely to the amount or sum to be paid on the principal, less than the whole amount of the principal, and to the interest less than the twenty-five per cent., and perhaps may refer also to the number of the certificates to be sold to one person, and confers no further power or discretion upon the board of supervisors in respect to such sales.

A construction of this language which would allow the board of supervisors to prescribe by such order, as the terms of sale, that payment might be made in anything besides money, or on credit, or that the county treasurer might enter into an *executory* contract of sale, or make a conditional sale, would be most dangerous and pernicious, and work incalculable mischief by uncertainty, insecurity, litigation and loss: consequences which certainly were never anticipated by the legislature.

We must hold that the statute confers no power upon a county treasurer to make, and no authority upon the board of supervisors to order him to make, any other than an absolute and fully executed sale of tax certificates, and for cash in hand. The very language of the power itself, " to sell and transfer by assignment," must mean such a sale with present payment, and by assignment and delivery, and no other.

If, then, the board of supervisors authorized the making of the contract set out in the complaint (as we must assume they did for the purposes of this demurrer), they acted without authority, and, as we think, in violation of law, and their action in this respect was *ultra vires* and void, and conferred no authority whatever upon the county treasurer to enter into this contract.

It follows as a clear legal consequence from this position, that the county treasurer received of the plaintiff the two hundred dollars paid or advanced upon this illegal contract,

not as a public officer, or in his official character as county treasurer acting within the scope of his authority so as to bind the county and make this money so received a part of the funds of the county in his hands as such treasurer, but as an individual and private person; and that he alone is liable (if he is liable) to refund it upon the failure of the consideration or for the want of it; and that the doctrine of *respondeat superior* is in no sense applicable to the question. 2 Dill. on M. C., § 772; *Fisher v. Boston*, 104 Mass., 87; *Rossire v. Boston*, 4 Allen, 57; *Maximilian v. Mayor*, 62 N. Y., 162; *Hayes v. Oshkosh*, 33 Wis., 318; *Dewey v. Sup'rs of Niagara Co.*, 62 N. Y., 294; Story on the Law of Sales, §§ 71, 76; 10 M. & W., 1.

The circuit court properly sustained the demurrer.

RYAN, C. J.  I entirely concur in the view taken by the court of the contract between the parties.

But the money paid by the appellant appears to have gone into the county treasury.  And I can entertain no doubt that the appellant is entitled to recover it, under his complaint, on the very ground that the contract was illegal and void.  The consideration of the payment failed.  The rule in such cases is stated by Mr. Addison, and I shall content myself with quoting it.  "The law also, so long as an illegal contract continues *executory*, implies, from the person who has received money in furtherance of the execution of the contract, a promise to refund it."  Addison on Contracts, 234–5.  And the author cites cases where the rule is applied to contracts, not merely unauthorized by law, but prohibited by law; immoral contracts.

*By the Court.* — The order of the circuit court is affirmed, with costs.