RICE and others, Respondents, vs. ASHLAND COUNTY, Appellant.

*March 13—April 1, 1902.*

*Pleading: Amendment: Statute of limitations: Taxation: Counties: Void sale of land: Recovery of purchase money: Interest: Subsequent transfers by purchaser: Reduction of recovery: Pendency of another action.*

1. Refusal to permit an answer to be amended by setting up the statute of limitations is *held* not an abuse of discretion, it appearing that at the time of answering all the material relevant facts were known to defendant, or might have been known by the exercise of ordinary diligence, that were known when the application for leave to amend was made.

2. Refusal to permit an answer to be amended so as to set up the statute of limitations is not a material error where it appears that the action was commenced within the time limited.

3. A resolution of the county board authorized the clerk to sell and convey the county's interest in lands on certain specified conditions, but by mistake the clerk sold for a sum insufficient to satisfy such conditions, by reason whereof the deeds were void. The purchase money was covered into the treasury and used for legitimate county purposes. *Held,* that the purchaser had a good cause of action against the county for the recovery of such money, and that such cause of action accrued at the time when the money was actually used by the county.

4. The liability of the county to return the money in such case rests upon the broad equitable doctrine that where, in a transaction not prohibited by law or involving moral turpitude, a county or other public corporation obtains money without authority of law, and uses the same in lieu of moneys obtained or that would otherwise have to be procured by legitimate taxation, the person from whom the same was obtained not receiving any consideration therefor, the money should be restored.

5. The county was not liable in such case for interest on the purchase money prior to the demand for its return.

6. The purchasers from the county having conveyed some of the lands to third persons and being to that extent unable to restore the county to its former situation, and it not appearing that there is any liability on their part to their grantees, the amount which they may recover from the county is reduced by the amount which they received from said grantees.

7. The pendency of an action previously commenced in the federal court on the same cause of action was not a bar to proceeding to judgment in the state court.

8. Plaintiffs having paid their money to the county in good faith, the fact that they relied wholly on the clerk's computation in determining whether the amount paid was sufficient to authorize him to convey the lands, or that they were parties to the mistake in the computation, or that the clerk told them that if the deeds were void they could not recover their money, does not militate against their right to recover; and there was therefore no error in refusing to grant a new trial on the ground of newly discovered evidence to show such facts.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. Reversed.

Action for money had and received. The complaint is substantially as follows: August 7, 1886, the county clerk of Ashland county, in its behalf, received of plaintiffs John H. Rice and James E. Palmer, $17,065.73, as payment for the right, title, and interest of such county in certain lands (particularly described), which sum said clerk in good faith represented was the full amount required to be paid in order to enable him to convey the county's interest in said lands. Rice and Palmer relied on such representations and accepted quitclaim deeds, executed in due form, purporting to transfer to them such interest. They acted for themselves in the transaction, and as trustees for other persons named as plaintiffs or who appear by their personal representatives. There was a resolution of the county board purporting to authorize said county clerk to sell the county's interest in said lands and convey the same to the purchasers by quitclaim deed, on certain specified conditions. By mistake the clerk did not demand, and Rice and Palmer did not pay, a sufficient sum to satisfy such conditions, by reason whereof the deeds they received were wholly void. The money was covered into the treasury and expended for legitimate county purposes before the demand for the return thereof hereafter mentioned. August 2, 1892, plaintiffs filed a claim against the county for

such return, and at the same time delivered to the county clerk a deed in form retransferring the lands. The county board disallowed such claim, and plaintiffs duly appealed from such action to the circuit court for Ashland county. [See *Rice v. Ashland Co.* 108 Wis. 189.]

The county, by answer, put some, but not all, of the material allegations aforesaid in issue, and pleaded in abatement the pendency of a former action commenced upon the same cause of action in the United States circuit court for the Western district of Wisconsin.

On the trial there was an objection to any evidence under the complaint, also a motion for leave to amend the answer, setting up the statute of limitations, which were overruled and the rulings duly excepted to. Plaintiffs' evidence established all the facts alleged in the complaint that have been referred to. On behalf of defendant there was evidence to the effect that plaintiffs, before the claim for a return of the money was filed, conveyed their right to some of the lands to third persons, receiving from the grantees, in the aggregate, $3,566. The cause was submitted without any definite evidence on the plea in abatement. At the close of the evidence the cause was submitted to the court for decision, on both sides, with the result that a verdict was directed in favor of plaintiffs for $17,065.73, the full amount of their claim and legal interest thereon from the time the money was paid to the county clerk, to wit, August 7, 1886. A motion for a new trial was overruled and the ruling duly excepted to. Judgment was rendered upon the verdict in plaintiffs' favor.

After judgment defendant's counsel moved to set the same aside and for a new trial because of newly discovered evidence. Such evidence was to the effect that *Rice* and *Palmer* paid their money to the county knowing that they were entering upon a speculating venture and after being advised by the county clerk that in his judgment, if the deeds he delivered to them should turn out to be void, they could not recover

their money; that one Brown represented plaintiffs in dealing with the clerk; that he and the clerk acted together in figuring out the amount that should be paid to the county to comply with the resolution under which the clerk assumed to have authority to make the deeds; that the clerk did not consult with the county board at all in the transaction, but acted entirely upon his own judgment as to what he had authority to do. Further new evidence was claimed to be in the possession of appellant's counsel establishing the plea in abatement. The affidavits in support of the motion set forth in detail the reasons why the so-called new evidence was not produced upon the trial. As to the evidence in support of the plea in abatement, it was claimed that defendant's counsel, several days after the commencement of the term of court at which the cause was tried, and shortly before it was called for trial, communicated with the clerk of the United States court, requesting a copy of the record in the alleged pending action, and that such request was not promptly complied with, the result being that the papers did not reach counsel until three days after the trial was concluded. The motion was denied. This appeal is from the judgment as well as from the order entered upon the motion.

For the appellant there was a brief by *A. P. Haagenson,* district attorney, and *R. Sleight* of counsel, and oral argument by *Mr. Sleight.*

For the respondents there were separate briefs by *Lamoreux & Shea* and *Tomkins & Tomkins,* and oral argument by *W. M. Tomkins* and *W. F. Shea.* To the point that interest was properly allowed from the time the money was paid to the county, they cited *Mansfield v. Lynch* (Conn.), 12 L. R. A. 285; *Hurd v. Hall,* 12 Wis. 122, 134; *Norton v. Rock Co.* 13 Wis. 611; *Pier v. Oneida Co.* 93 Wis. 463, 102 Wis. 338; *Thomson v. Elton,* 109 Wis. 595; *United States v. Sanborn,* 135 U. S. 271; *Redfield v. Ystalyfera I. Co.* 110 U. S. 174.

MARSHALL, J. The various assignments of error will be considered in their order.

1. Did the court err in refusing to allow defendant to amend its answer, setting up the statute of limitations? The application for leave to amend was addressed to the sound discretion of the court. *Whereatt v. Worth,* 108 Wis. 291, 84 N. W. 441. We are unable to see that such discretion was abused. True, there were circumstances palliating the omission to set up the defense of the statute of limitations when the answer was interposed. Nevertheless, all the facts were then known to appellant's officers, or might have been known to them by the exercise of ordinary diligence, that were known when the application for leave to amend was made, except as to whether plaintiffs would be able to bring their alleged cause of action to a hearing. We are unable to see how that circumstance excused setting up the defense of the statute of limitations when the opportunity therefor existed, so as to warrant us in saying that it was an abuse of judicial power not to relieve appellant from the default.

A complete answer to the assignment of error, however, exists in the fact, which appears clearly, that defendant was not prejudiced by the ruling complained of. The money was paid to the county August 6, 1886, at the earliest. When it was actually applied to the use of the county does not definitely appear, but it is reasonably certain that such application did not take place till some time after the clerk received the money. Plaintiffs' cause of action for money had and received did not mature till the money was so used. The clerk had no right to receive the money at all on behalf of the county. If it had not been made a part of the public funds of the county as indicated, plaintiffs' cause of action for a return thereof would have been against the county clerk if against any one. *Thomson v. Elton,* 109 Wis. 589, 85 N. W. 425; *Smith v. Barron Co.* 44 Wis. 686. It should be noted that in the last case cited it was held that the officer receiving the

money, only, was liable, notwithstanding it had been turned into the county treasury and become a part of the county funds. It did not appear, however, that the money had been actually used by the county for its legitimate purposes. Further, the transaction in that case was one which the county board had no power to authorize. RYAN, C. J., dissented from the opinion of the court, holding that the county was liable to refund the money solely because of its having become a part of the county funds, regardless of the doctrine of *ultra vires*. The rule announced by the court has never been extended in this state to a case where authority to do the act involved might have been given and the proceeds of the transaction were actually used for legitimate county purposes, taking the place of other money accumulated or that would otherwise have been required to be accumulated in the public treasury by legal means. Plaintiffs' claim was presented to the county board for consideration August 2, 1892. Taking the most favorable view of the evidence for appellant that it will reasonably admit of, that was within six years of the time the cause of action accrued. The statute does not commence to run upon a claim till such time as it might be enforced by action (sec. 4249, Stats. 1898); and the presentation of a claim to a county board for allowance, where the law requires that method of commencing proceedings against a county, is the commencement of an action within the meaning of the statute of limitations (sec. 4242). From this it will be seen that, had the application for leave to amend been granted, it would not have affected the final result.

2. Did the court err in overruling the objection to any evidence under the complaint, or in denying appellant's motion for the direction of a verdict, or in granting plaintiffs' motion for a verdict? Those three propositions, as the record stands, may be considered together. If the complaint states a

cause of action, since the evidence establishes the essential facts therein alleged, and the first proposition must be answered in plaintiffs' favor, all must be so answered. It is considered that the allegations of the complaint satisfy all the essentials of the doctrine upon which the liability was sustained in *Thomson v. Elton, supra* (109 Wis. 589). We cannot profitably add to what was there said in regard to the doctrine involved. The law is deemed to be firmly established that if an officer of a public corporation, assuming to have authority to act in its behalf, receives the money of another in a transaction ostensibly on behalf of the corporation, which it is not prohibited by law from entering into, and such other, acting in good faith, parts with such money, and it is thereafter covered into the public treasury and used for legitimate corporate purposes, and the transaction turns out to be void, leaving such other with no consideration for his money, the law implies a promise by the corporation to repay the same, which promise may be enforced by action; that a public corporation cannot, under such circumstances, retain the money and invoke the doctrine of *ultra vires* to defend its position, its rights in that regard, in the situation suggested, being no greater than those of a private corporation. That rules this case so clearly that discussion of the matter cannot make it more plain. The liability to restore the money in such a case does not necessarily rest on the doctrine of relief from mutual mistake of fact, or mistake on one side and fraud on the other. It is grounded on the broad doctrine of natural justice, that where, in a transaction not prohibited by law or involving moral turpitude, a county or other public corporation obtains the property of another without authority of law and uses the same in lieu of moneys obtained or that otherwise would have to be procured by legitimate taxation, the person from whom the same was received not obtaining any consideration therefor, the money should be restored.

*Marsh v. Fulton Co.* 10 Wall. 676. That doctrine is stated in Green's Brice, Ultra Vires, 623, as follows:

"Persons who have in any way advanced money to a corporation, which money has been devoted to the necessaries of the corporation, are considered in chancery [and also, it would seem to follow, in an equitable action for money had and received] as creditors of the corporation to the extent the loan has been expended."

To support that the author refers to many cases where corporations, without authority, obtained money from private persons upon ostensibly valid contracts, which were in fact wholly void, and the corporations were held liable to account therefor so far as the proof showed that the money had been expended for legitimate corporate objects.

3. Did the court err in allowing interest from the time the money was paid to the county clerk? That must be answered in the affirmative. The cause of action, as we have seen, does not date from the time the money was paid to the county clerk, but from the time it was used by the county for public purposes. The county was not responsible for the mere error of its clerk in receiving the money. *Gilbert v. Pier,* 102 Wis. 334. Its liability was created by using plaintiffs' money as public funds. It was not then liable absolutely, because there was no way of knowing that respondents would ever treat the transaction upon which the money was paid as rescinded. They did not do so and ask for the return of the money till August 2, 1892. The circumstances were such that some affirmative act on their part was necessary to put the county in the wrong and start the interest period running. This case is entirely unlike *United States v. Sanborn,* 135 U. S. 271, 10 Sup. Ct. 812, and *Redfield v. Ystalyfera I. Co.* 110 U. S. 174, 3 Sup. Ct. 570, and other cases cited by counsel for respondents, where the party required to restore was held to be in the wrong from the time the money was received, and interest from that time was allowed as damages,

except as such right was deemed affected by laches on the part of the claimant. Here the county was not guilty of any wrong till it refused to pay the money to respondents when they demanded it. This case is like *Louisiana v. Wood,* 102 U. S. 294. The facts there were these: There was power to. borrow money and issue bonds. It was so defectively executed that the bonds issued were void. The holder thereof was held entitled to recover the money parted with therefor, it appearing that the corporation had enjoyed the benefit of the same as public money, expending it for its legitimate purposes, and to recover interest thereon at the legal rate from the time the obligation to restore the same was denied.

4. Is appellant entitled to credit, on the respondents' demand, for the money received by the latter in dealing with the apparent title made to them by the void deeds? That question, it seems, must be resolved in favor of appellant. The responsibility to restore, as we have seen, in cases of this kind, rests wholly on the doctrine of equity. That goes no further than to protect the party against loss of his money, parted with by him in good faith and paid into the county treasury without any benefit moving from the county to him, upon his restoring the corporation to its former position,— not necessarily upon condition of a full restoration in that regard, but so far as equitable rules require. If a person parts with his money to a municipal corporation for invalid bonds, and uses his apparent ownership of good obligations by selling the same to another as valid securities, his cause of action, if he has one, by equitable assignment passes with the ownership of the paper, leaving no cause of action in him for a restoration of his money by the municipality, until something thereafter occurs to his damage. The vendee of the paper, under those circumstances, is held to be the owner of the right to demand a return of the consideration paid to the corporation therefor. *Louisiana v. Wood, supra.* If plaintiffs in this case, after receiving the void deeds from the

county, had transferred their claim of title to all the lands to a third person by quitclaim deed, receiving the full amount which they paid to the county, obviously their equitable right to demand repayment of the money from the county would have passed to their grantee. They would have no equitable ground of action therefor against the corporation thereafter, because of their having used their position under the void deeds to their benefit, to the extent of the full amount of the money paid to acquire it. One of the essential elements of liability in a case like this would then have been entirely lacking: failure of consideration. What would have been true in case of a sale of plaintiffs' claim of title to all the lands must be true *pro tanto* so far as they used such claim to their benefit. To that extent they parted with their right to demand reimbursement from the county. They incapacitated themselves from enforcing such demand because of their inability to restore the county to its former situation. It was held in *Gates v. Parmly,* 113 Wis. 147, 87 N. W. 1096, that a person cannot recover the purchase money of land, paid on an executory contract, upon the ground of failure of consideration, after parting with the claim of title he obtained for such money so as to be unable to return it to his vendor, even though such claim be entirely void.

We do not overlook the holding in *Paul v. Kenosha,* 22 Wis. 266, to the effect that it is not necessary to return worthless paper as a condition of maintaining an action to recover the consideration parted with therefor. That does not go so far as to hold that there can be a recovery and the void paper be left outstanding in the hands of third persons. In that case the paper was actually brought into court, canceled, and made a part of the record. Under those circumstances it was said that plaintiff could recover. The learned counsel for respondents in this case recognized the obligation to restore to the county the shadow of title obtained by respondents under their void deeds. They tendered to the county, as we have

seen, at the time of making the claim for a restoration of the money, a quitclaim deed in form retransferring the lands. That was ineffectual as regards the lands which were in form transferred by respondents to third persons. *Gates v. Parmly, supra.* So far as the record shows, there is no liability on the part of respondents to their grantees. If they are not here charged with the money which they obtained by dealing with the claim of title they possessed under the void deeds, they will make a clear profit, out of their transaction with the county, of $3,566 and interest thereon. The doctrine of equity upon which they rely does not go that far. It may be invoked by respondents to make them whole, so far as appellant used their money for its legitimate public purposes. Beyond that the equities are in favor of the county. Respondents used their position under the void deeds, as before indicated, to their gain. Whatever title the county had to the lands thereby became, and so far as appears remains, clouded by the conveyances to those from whom such gains were received. Plaintiffs, in order to recover, were bound to maintain that they suffered loss to the profit of the county by parting with their money, receiving no consideration therefor. When it appeared, *prima facie,* that they were enabled to assert a claim of title to the lands by reason of the formal conveyance thereof to them, so as to obtain the sum of $3,566, they should have taken up the burden of showing an equitable right to a full recovery notwithstanding such fact. How they could have carried that burden successfully under the circumstances, we need not inquire. It is sufficient for the purposes of this case to say that they made no effort to do so.

*Bickford v. Page,* 2 Mass. 455, upon which counsel rely to support their claim for a full recovery, does not touch this case. That was an action for breach of a covenant of seisin and good right to convey, which was said not to run with the land, by the common law, because a mere personal claim or chose in action is not assignable. That rule has ceased to be

universal since such claims have become assignable. *Kimball v. Bryant,* 25 Minn. 496; *Mecklem v. Blake,* 22 Wis. 495; *Noonan v. Ilsley,* 21 Wis. 138; Pingrey, Real Prop. § 1429. The decision was grounded wholly on the nonassignability of choses in action and the rigorous common-law rule as to the measure of damages for a breach of covenant of seisin and good right to convey. It will be seen at once that the rule must be very different where the right to recover rests wholly upon doctrines of equity.

5. Did the court err in overruling the motion to set aside the judgment and grant a new trial upon the ground of newly discovered evidence? On that it seems that respondents must prevail, if for no other reason, because, if all the newly discovered evidence had been produced and considered upon the trial, it could not have changed the result. The pendency of an action previously commenced on the same cause of action in the federal court, if such was the situation, did not prevent proceeding to judgment in the state court. Again, what the county clerk said at the time plaintiffs paid the money to him, and the fact, if it is a fact, that they relied wholly on his computations in determining whether the amount paid was sufficient to authorize him to make the deeds, are wholly immaterial to their right to recover. They paid their money in good faith. The consideration therefor entirely failed as between them and the county. The latter had the full benefit of the money for public purposes. The mere shadow of title obtained for the money has been transferred to the county, except so far as it was used to obtain the $3,566 to which we have referred. Admit that the clerk informed respondents that in the event the deeds he delivered to them should be held void they could not recover their money, and admit that they were parties to the mistake in computing the amount of money required to be paid in order to authorize the clerk to convey the county's interest in the lands,—that

does not militate at all against their right to recover of the county upon the grounds of equity we have discussed.

The result of the foregoing is that respondents' legitimate claim against appellant on August 2, 1892, when the demand for a restoration of the money was made, was $13,499. They are entitled to recover that sum with legal interest from August 2, 1892, and the costs as heretofore taxed in the circuit court, and no more. The case having been submitted to the trial court for decision at the close of the evidence, it should be remanded upon reversal here for the rendition of the proper judgment.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment as indicated in the opinion.