SCHOOL DISTRICT No. 4, TOWN OF SIGEL, Appellant, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*November 9—December 6, 1927.*

*Workmen's compensation: Contract of employment: Person hired by district clerk to build fires in schoolhouse.*

1. The board of a district school informally considered an objection the teachers had made to building fires in the schoolhouse in cold weather, and, without a vote or a record made, the clerk was instructed to hire some one to do the work at a designated sum per day. *Held,* that the deceased, who was hired by the clerk, and who was burned to death while building the fires, was not an "employee" of the district within the workmen's compensation act. p. 345.
2. A contract of employment will not be implied against the school district where such implication would conflict with sec. 40.24, Stats., prescribing the mode of contracting by which alone the school board may act for the district. p. 345.
   CROWNHART and STEVENS, JJ., dissent.

APPEAL from a judgment of the circuit court for Dane county: AUGUST C. HOPPMANN, Circuit Judge. *Reversed.*

*B. M. Vaughan* of Wisconsin Rapids, for the appellant.

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan* and *Mr. Hugh A. Minahan,* deputy attorney general.

OWEN, J. In proceedings instituted upon its own initiative, the *Industrial Commission* made an award against *School District No. 4, Town of Sigel,* in the sum of $1,000, to be paid into the state treasury, under the provisions of sec. 102.09, sub. (4m), par. (f) of the workmen's compensation act, the occasion of such award being the death of one August Olson, resulting from injuries sustained by him while in the course of his employment in building fires in the school district schoolhouse. The school district brought an

action in the circuit court for Dane county to set aside the award. The court affirmed the award, and the school district appealed.

During the month of May, and for some time prior thereto, August Olson built the morning fire in the district schoolhouse, receiving as compensation from the district the sum of ten cents a day. On the 2d day of May, 1924, his clothing took fire, presumably as the result of using gasoline in starting the fire, causing serious burns, from which he died. He had no dependents, and the *Industrial Commission* made an award under sec. 102.09, sub. (4m), par. (f), which provides:

"In each case of injury resulting in death, leaving no person wholly dependent for support, the employer or insurer shall pay into the state treasury such an amount, when added to the sums paid or to be paid on account of partial dependency, as shall equal four times the deceased employee's average. annual earnings, such payment to the state treasury in no event to exceed one thousand dollars. The payment into the state treasury so provided shall be made in all such cases regardless of whether the dependents or personal representatives of the deceased employee commence action against a third party as provided in subsection (2) of section 102.29."

By par. (g) of the same section the moneys so paid into the state treasury are appropriated to the *Industrial Commission* for the discharge of all liability for additional death benefits provided for by said sub. (4m).

The school district claims that Olson was not its employee within the meaning of the compensation act. Sec. 102.07 declares: "Every person in the service of the state, or . . . any . . . school district . . . under any appointment, or contract of hire, express or implied, oral or written, except any official of the state, or of any county, city, town, village, or school district therein," to be an employee thereof.

The proceedings leading up to the employment of Olson were as follows: The teachers objected to building fires in

cold weather. The board talked the matter over in an informal way, and the clerk was instructed to hire some one to build the fires at a sum not to exceed twenty cents a day. This was at an informal meeting of the board. The matter was talked over by the members of the board, but no vote was taken and no record made. Pursuant to these instructions the clerk hired Olson to build the fire. There was no written contract. It is plain that under the statutes and the uniform decisions of this court no express contract was culminated between the district and Olson. Sec. 40.24, Stats., provides that "No act authorized to be done by the board shall be valid unless voted at its meeting." This court has consistently held that a contract binding upon the school district must be authorized by a vote of the school district board at a meeting of the board. *Doyle v. Gill,* 59 Wis. 518, 18 N. W. 517; *School District v. Baier,* 98 Wis. 22, 73 N. W. 448; *McNolty v. Board of School Directors,* 102 Wis. 261, 78 N. W. 439; *Manthey v. School District,* 106 Wis. 340, 82 N. W. 132; *Caxton Co. v. School District,* 120 Wis. 374, 98 N. W. 231. Although it was held in *Butler v. Joint School District,* 155 Wis. 626, 145 N. W. 180, that "When all the members of the board are present, official action may be taken although the meeting be not formally called or the action formally recorded in the minutes," nevertheless there has been no departure from the universal holding that any specific contract to be binding upon the school district must be authorized by a vote of the school board taken at a meeting of the board. The meeting may be informal, the vote may not be formal and may not be recorded, but, nevertheless, the contract must be authorized by the combined action of the board.

In this case the board never authorized the contract with Olson. They simply delegated the clerk to employ some one. If the clerk may be delegated to employ some one to build fires at ten cents a day, he may be delegated to employ a

janitor at $100 per month, to employ a teacher, to purchase necessary charts, blackboards, and other equipment. To say that there was an express contract between the school district and Olson would be to authorize the culmination of any other contract which a school district board has the power to make in exactly the same way. This would wipe out the statutory requirement, which has always been rigorously enforced. We must hold that Olson was not in the employ of the district by virtue of an express contract.

The only question remaining to be considered is whether Olson was in the employ of the district by virtue of an implied contract. The facts from which a contract will be implied against a municipal corporation are quite different from those which raise an implication of contract between natural persons. It is a general rule that no contract will be implied against a municipality if such implication would conflict with the statute prescribing a mode of contracting by which alone the municipality may bind itself. *Appleton Waterworks Co. v. Appleton,* 132 Wis. 563, 113 N. W. 44; *Cawker v. Central B. P. Co.* 140 Wis. 25, 121 N. W. 888. The statute explicitly provides that a contract with the school district must be authorized by a vote of the school district board at a meeting thereof. To say that a contract will be implied in the absence of such authorization would be to entirely wipe out this provision of the statute, and it must be held that Olson was not in the employ of the district by virtue of an implied contract. From this it results that the relations existing between Olson and the school district were not such as to bring them under the terms of the workmen's compensation act, that the school district is not subject to the award which the *Industrial Commission* made, and that the award should be set aside.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment vacating the award of the *Industrial Commission.*

CROWNHART, J. (*dissenting*).    I respectfully dissent from the opinion of the court in this case. The sole question involved here is whether the deceased, August Olson, at the time of the accident resulting in his death, was an employee of the school district.

The compensation act is recognized as the greatest piece of humane legislation ever enacted in this state. This court has always held that it should be liberally construed to carry out its humane purposes. The act was optional as to all private employers, but they soon became so imbued with its beneficent purposes that they adopted it with unanimity. While the law was optional with private employers, it was made compulsory as to the state and its governmental subdivisions. The legislature felt that the government should set the example for all employers, and thus every governmental agency was made subject to the act, and school districts were included. Employees of a school district come under its protection, and the law is to be liberally construed to cover them. I do not think the spirit of the law has been carried out in this case. On the contrary, it seems to me that the decision of the court is highly technical and without support in fact or in law. The *Industrial Commission* is exclusively authorized to find the facts. The law says:

"The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive." Sub. (1), sec. 102.23, Stats.

The *Commission* found the fact to be that the deceased was employed by the school district to build the morning fires in the schoolhouse, and was so employed at the time of the accident causing his death. It is admitted that he actually did the work for the two winters of 1922–23 and 1923–24. For this he was paid the munificent sum of five cents a morning the first season, and ten cents a morning the second season. By accident his clothes were set on fire and he burned to death.

Now it is said that, as a matter of law, he was not legally

hired, but that he was hired without authority.   I cannot follow the court in its reasoning.   The school board met and agreed to hire some one at a wage not to exceed twenty cents per day.   The board directed the clerk of the district to employ some one at that wage.   The clerk hired the deceased on that authority.   The school board drew the orders and paid the deceased his wages regularly each month during the two seasons.

The school board may act officially when all its members are present and participate in the act, though the meeting may be informal, not regularly called, and no record made in the minutes of the meeting. . *Butler v. Joint School District,* 155 Wis. 626, 145 N. W. 180.   That case is on all-fours in principle with the case at bar.   There the district employed a school teacher to teach in the primary grades, and then, in violation of her contract, attempted to compel her to teach in the higher grades as well as in the primary grades.   She refused to do this without extra pay.   The school board met informally and discussed the matter.   They decided to discharge the teacher unless she complied with their wishes.   Thereupon they authorized their director to see the teacher and notify her of the wishes of the board, and if she then continued to refuse to teach without additional pay, that he notify her of her discharge.   This he did. The meeting of the board was informal, no vote was taken, and no record was made of the action of the board.   The teacher refused to go on with her contract, accepted the notification of the director as a discharge, and sued for damages.   The trial court directed a verdict against the plaintiff, and the case came to this court on appeal.   By reference to the case and briefs it is seen that the identical questions raised in the instant case were there raised.   Counsel for the school district in that case, in their brief in this court, said:

"We submit, with confidence, that there is absolutely no evidence in this record showing any action of the defendant school board discharging plaintiff or in any way preventing

her from performing her part of the contract, or otherwise; or that any action was taken by the said defendant through its school board in relation to the above matter.

"It is fundamental that unless the school board of the defendant district did meet as such and did take some action as such in either discharging plaintiff or in wrongfully preventing her from continuing her contract, her cause of action must fail."   Citing sec. 432, Stats. 1913; *McNolty v. Board of School Directors*, 102 Wis. 261, 78 N. W. 439; *Manthey v. School District*, 106 Wis. 340, 82 N. W. 132.

The supreme court, by Mr. Chief Justice WINSLOW, said:

"The evidence was sufficient to take to the jury the question whether the board prevented the plaintiff from proceeding to fulfil her contract to teach the primary department. When all the members of the board are present, official action may be taken although the meeting be not formally called or the action formally recorded in the minutes."   *Butler v. Joint School District*, 155 Wis. 626, 628, 145 N. W. 180.

In the *Butler Case*, as here, the board transacted its business with the teacher by delegating its authority to one of its members to act as the agent of the board.   A school board can act through an agent, the same as any other corporate body, unless expressly restricted by law.   I know of no restriction applicable to an employee of this kind.   In the *Butler Case* the question was directly raised by counsel for the school district, but the court seems to have deemed it unnecessary to discuss that point.   Authorities, however, are numerous that municipalities and governmental subdivisions may act through an agent, duly authorized, where the municipal body had authority to do the act itself and where it was not otherwise restricted by law.

Not only might the district authorize one of its members to perform the purely ministerial act of hiring the deceased at a wage not to exceed a maximum amount fixed by the board, but the district was bound by moral obligations, the same as individuals.

This court has adopted the reasonable rule as to municipal

liability in cases·where the municipality accepts the benefits of a contract not legally entered into but which it was authorized to make:

"It is considered that this case is ruled against appellant by *Paul v. Kenosha,* 22 Wis. 266, *Smith v. Barron County,* 44 Wis. 686, *Brodhead v. Milwaukee,* 19 Wis. 624, and *Lafebre v. Board of Education,* 81 Wis. 660, 51 N. W. 952,—particularly by the first and last of such cases. The principle of those cases is that municipalities are bound by moral obligations, as well as individuals, and that where, in case of the latter, such an obligation will give rise to a legal liability, it may have the same effect as to a municipality; that if a municipality obtains money of a person by an illegal sale of property to him, or an illegal contract of some kind, not expressly prohibited by law nor tainted by moral turpitude so that court on grounds of public policy will not recognize it, or the relations growing out of it, to grant relief, and such person acts in good faith in parting with his money, believing the same to be for the benefit of the municipality, and the latter uses the money for its legal and legitimate purposes, to that extent the law will imply a promise to return the same, upon which an action for money had and received will lie." *Thomson v. Town of Elton,* 109 Wis. 589, 593, 85 N. W. 425.

And, of course, where a workman is induced to render services, as here, to a school district, which are necessary and valuable to the district, and which are accepted by the school board with full knowledge, then a contract is implied and an action in *quantum meruit* would lie. The moral obligation in this case is undoubted. "The laborer is worthy of his hire."

The school district thus became morally bound even though the contract in form was not strictly legal, and if morally bound it could legally ratify the act of its clerk and thus become legally bound. The school district was not without authority to hire. The only contention made, to show that he was not an employee, was that the deceased was not employed in a strictly regular manner. I do not concede

this, but if we concede it for the purposes of the decision, still, as the district had the authority to hire, it had the authority to ratify the act of its clerk in hiring the deceased. This it did by accepting the services of the deceased over a long period, and paying him according to the terms agreed upon each month. The moral obligation ripened into a legal obligation. On the subject of ratification, this court said through Mr. Chief Justice VINJE:

"Under familiar principles public officers may ratify those acts of an agent which they had authority to direct him to do when done and which they could authorize at the time of ratification. Mechem, Pub. Off. § 534; *Koch v. Milwaukee,* 89 Wis. 220, 62 N. W. 918; *Frederick v. Douglas County,* 96 Wis. 411, 424, 71 N. W. 798." *Wade v. Sheboygan County,* 167 Wis. 98, 99, 166 N. W. 784.

None of the cases nor the statute cited in the opinion of the court to sustain its decision is in point, as I read them.

Sec. 40.24, Stats., reads:

". . . No act authorized to be done by the board shall be valid unless voted at its meeting and no formal notice of a special meeting shall be required where all members are present and consent to consider matters relating to the district. . . ."

In *Doyle v. Gill,* 59 Wis. 518, 18 N. W. 517, "the plaintiff had contracted with the school district board to sell and deliver at a place designated, for the use of the school, four cords of wood of good quality, and had delivered the same, as he claimed, in compliance with the contract. The wood had not been examined as to quality, or measured as to quantity, by the district board, or any one of them. The clerk of the district made out and signed an order upon the defendant, as the district treasurer, for the sum of $17, as the agreed price of the wood to be so delivered, and gave it to the plaintiff, and he then took the order to the district director and he countersigned it. It was then presented to the defendant, as district treasurer, for payment," who refused

to pay until the wood was measured and accepted. Here was a case where the board had never accepted delivery under the contract, and the plaintiff sought to enforce the payment of his order by suit. He was denied recovery because his action was premature. Clearly, no other result could have been reached by the court.

In *School District v. Baier,* 98 Wis. 22, 73 N. W. 448, the school treasurer was sued on his bond to recover the amount that he had paid a school teacher for teaching seven months. The full board never met and authorized the contract of the teacher; the board never met during the year and performed any act ratifying the contract; the teacher had no certificate at the time the pretended contract was made; the treasurer paid the teacher without any order being presented or drawn on him. At the annual school meeting the treasurer's report was rejected and disallowed, for the reason that he presented no vouchers. Judgment was had against the treasurer because the contract was not authorized in the first place; the teacher was not holding a certificate to teach, and the treasurer paid out the money without the order of the clerk. Clearly, that case is no authority for the opinion of the court here.

In *McNolty v. Board of School Directors,* 102 Wis. 261, 78 N. W. 439, "the plaintiff taught the defendant's school from September 1 to November 25, 1896, under a written contract, and was paid therefor. Just prior to the expiration of this term of service, the plaintiff claims that he had a talk with the secretary of the school board, and that the secretary promised that he should teach six months. . . . It appears without dispute that the executive committee never considered the question as to the additional six months' service, and never ordered the making of any contract therefor. The plaintiff taught for one month after the expiration of his written contract, namely, up to the 21st of December," and was paid therefor. A few days later he was discharged and

brought action for damages. The school was under the township system, and governed by a special statute authorizing the executive committee to employ teachers, and requiring each contract to be in writing. The court said:

"It is familiar law that when a board of public officers is about to perform an act requiring the exercise of discretion and judgment the members must all meet and confer together, or must all be properly notified of such meeting, in order to make the action binding. Individual and independent action, even by a majority of the members of the board, will not suffice." *McNolty v. Board of School Directors,* 102 Wis. 261, 263, 78 N. W. 439.

The court there correctly stated the general rule, but the decision is not applicable to the instant case.

In the instant case all members of the board met, exercised their discretion, and delegated to the clerk the purely ministerial act of hiring a person to build the fires at a wage not to exceed a stated amount.

In *Manthey v. School District,* 106 Wis. 340, 82 N. W. 132, the plaintiff school teacher taught six months and was paid therefor, when she was discharged by the school board. She had been hired by the individual members of the board, but her contract of hire had never been authorized at any meeting of the board. This court held that she could not recover, following the case of *McNolty v. Board of School Directors,* 102 Wis. 261, 78 N. W. 439.

In *Caxton Co. v. School District,* 120 Wis. 374, 98 N. W. 231, the clerk and director of the school district met plaintiff's agent on the highway and agreed to purchase from plaintiff a certain chart at an agreed price. The treasurer of the district did not participate in the transaction, or know anything about it. No meeting of the school board had been called or had; no approval of the purchase of the chart at a meeting of the school board was had; the agent left the chart at the schoolhouse without the knowledge of the school district officers; the chart was used by some of the teachers, but

not by authority of the district or its officers. The plaintiff was notified that the chart was its property and subject to its disposal. Thereafter the district, at a regular meeting, repudiated the transaction of the plaintiff. Payment of the school order was refused. The plaintiff sued. This court held that the plaintiff could not recover, relying on former decisions. The statute provided that all purchases of the character of the one in question "shall be approved at a regular meeting of the board at which all the members are present." Of course, as no such approval was had, and as the action of two members of the board had never been ratified by the full board, the plaintiff could not recover. The district did not become enriched in any manner, as it did not accept or retain the property of the plaintiff.

So it seems to me that the decisions cited to sustain the opinion are clearly distinguishable, and that the instant case is ruled by the *Butler Case*.

STEVENS, J. (*dissenting*). I am satisfied that this case is ruled by *Butler v. Joint School District*, 155 Wis. 626, 145 N. W. 180, and that a valid contract of employment was made between the deceased and the school district.