SHULSE, Respondent, vs. CITY OF MAYVILLE, Appellant.

*December 9, 1936—February 9, 1937.*

For the appellant there was a brief by *B. J. Husting* and *Robert P. Pike,* both of Mayville, and oral argument by *Mr. Pike.*

For the respondent there was a brief by *George A. Hartman* of Juneau, attorney, and *Richmond, Jackman, Wilkie & Toebaas* of Madison of counsel, and oral argument by *Mr. Hartman* and *Mr. W. E. Torkelson* of Madison.

ROSENBERRY, C. J. After alleging that the plaintiff is a golf course greens keeper by occupation and the corporate character of the defendant, the complaint continues:

"That on or about the 15th day of April, 1934, the defendant city, by its mayor, Walter Schellpfeffer, entered into an agreement with the plaintiff whereby it was agreed that the

plaintiff would perform services as foreman and overseer and supervise the work on Mayville City Works Project No. 14B123 and it was further agreed that the said city would pay the plaintiff the reasonable value of his said services as supervisor.

"That in accordance with said agreement and following said agreement plaintiff supervised the work on Mayville City Works Project No. 14B123 from the 28th day of April, 1934, down to and including the 12th day of November, 1934, and worked as such supervisor on said project a total of 1,176 hours, which services were reasonably worth the sum of $1,058.40, no part of which has been paid. That the common council of the said city of Mayville were cognizant of the said hiring of the said plaintiff by the mayor of the city of Mayville and that they acquiesced therein and accepted the benefits of plaintiff's labor under the said agreement and co-operated with plaintiff as such supervisor in placing the unemployed of the city of Mayville at work upon the said project under the supervision of plaintiff and the said council of said city ratified the said employment of plaintiff by permitting him to render the said services over the aforesaid period of time and by accepting the benefits of said services."

On behalf of the defendant it is argued that the mayor had no authority to bind the city; that the city could be bound only by adoption of an ordinance determining the compensation (sec. 62.26 (5), Stats.); that, if the council had power to ratify, the act of ratification should be an act of a dignity equal to that required by statute to authorize the making of a contract in the first instance, hence there can be no ratification by acquiescence.

Plaintiff contends that the contract in question was one which the defendant city had the power to make. The contract having been made by the mayor with the knowledge of the common council; the council having accepted the services contracted for, it thereby ratified the act of the mayor, and the defendant is liable accordingly. The plaintiff also contends that the defendant, having acquiesced in and accepted

the benefits of plaintiff's services, is liable for the reasonable value thereof, even though the mayor was without authority and the council did not formally ratify the employment, citing in support of its position *Retelle v. State* (1929), 198 Wis. 393, 223 N. W. 840. The authority of the railroad commission (now public service commission) to contract, which is involved in the *Retelle Case,* is upon such a different statutory basis than the power of municipalities that the situations are hardly comparable. For this reason the case is not very persuasive.

The contentions of counsel have led us to re-examine the entire question of the liability of municipalities for moneys received, services rendered, or goods delivered and accepted where no formal contract has been entered into in the manner prescribed by statute by the municipality sought to be charged. It is apparent from a consideration of the cases that the court has not always used the terms "ratification," "acquiescence," and like terms consistently. It is also clear that principles laid down in one class of cases are sometimes carried over into other classes of cases without regard to the fundamental differences in the cases, as, for instance, the difference between an action brought to restrain payment of money out of the treasury and one brought to recover back into the treasury money that has been paid. (See *Ellefson v. Smith* (1924), 182 Wis. 398, 196 N. W. 834.)

To state the facts in the several cases, analyze them, and distinguish the cases would extend this opinion to an unwarrantable length. The cases examined, not cited in the opinion, are listed below,[1] and such as are necessary to a decision of the question presented will be referred to in the opinion.

While the cases considered appear to be correctly decided, it is impossible to reconcile the language of the opinions. It is

---

[1] *Brodhead v. Milwaukee* (1865), 19 Wis. *624; *Paul v. Kenosha* (1867), 22 Wis. 266; *County of Sheboygan v. City of Sheboygan* (1932), 209 Wis. 452, 245 N. W. 87.

considered, however, that the following propositions are established:

(1) A municipality does not become liable by reason of any act of its officers or agents either for money, services, or goods where the municipality had no power originally to make itself liable by contract. *Trester v. Sheboygan* (1894), 87 Wis. 496, 58 N. W. 747; *McGillivray v. Joint School District* (1901), 112 Wis. 354, 88 N. W. 310; *Riesen v. School District* (1926), 189 Wis. 607, 208 N. W. 472.

(2) A municipality does not become liable for money, services, or goods upon principles of unjust enrichment where it is prohibited from contracting in any other than a specified way, as, for instance, with the lowest bidder. *Caxton Co. v. School District* (1904), 120 Wis. 374, 98 N. W. 231; *Chippewa Bridge Co. v. Durand* (1904), 122 Wis. 85, 99 N. W. 603; *Appleton Waterworks Co. v. Appleton* (1907), 132 Wis. 563, 113 N. W. 44; *Neacy v. Milwaukee* (1920), 171 Wis. 311, 176 N. W. 871; *Journal Printing Co. v. Racine* (1933), 210 Wis. 222, 246 N. W. 425.

(3) Where the statute specifies the manner in which a municipality may enter into a contract, it does not become liable upon a contract entered into in some other way unless the informal contract be ratified with the formality required by statute to make a contract. *Lee v. Racine* (1885), 64 Wis. 231, 25 N. W. 33; *Koch v. Milwaukee* (1895), 89 Wis. 220, 62 N. W. 918; *Caxton Co. v. School District, supra; Harris v. Joint School District* (1930), 202 Wis. 519, 233 N. W. 97. See *Frederick v. Douglas County* (1897), 96 Wis. 411, 71 N. W. 798 (concurring opinion).

(4) Where the municipality has power to do an act or enter into an obligation and is not prohibited from creating a liability in any but a specified way, it may become liable upon principles of unjust enrichment for moneys had and received, for services rendered, and for goods furnished. *Thomson v.*

*Elton* (1901), 109 Wis. 589, 85 N. W. 425; *Rice v. Ashland County* (1902), 114 Wis. 130, 89 N. W. 908; *MacLeod v. Washburn* (1922), 178 Wis. 379, 190 N. W. 124.

(5) Where a municipality has received money, goods, or services and has accepted the benefits thereof and it had power had it proceeded in the statutory way to acquire the money, goods, or services and it has paid therefor, an action to recover the money back into the public treasury will not lie where it is inequitable and unjust to require the repayment, but otherwise where such repayment would be equitable. *Ellefson v. Smith, supra; Frederick v. Douglas County, supra* (action to enjoin further payments and to recover back payments made). See *Neacy v. Drew* (1922), 176 Wis. 348, 187 N. W. 218; *Murphy v. Paull* (1927), 192 Wis. 93, 212 N. W. 402.

(6) Where the statute provides that a contract can be made by a municipality only in the way specified, an action will lie to restrain payment pursuant to a contract not made in compliance with the statute, even though there has been part performance and acceptance by the municipality. *Trester v. Sheboygan, supra; Wagner v. Milwaukee* (1928), 196 Wis. 328, 220 N. W. 207; *Neacy v. Milwaukee* (1920), 171 Wis. 311, 176 N. W. 871; and see *Neacy v. Drew* (1922), *supra.* But see *Smith v. Board of Supervisors* (1878), 44 Wis. 686, 687.

(7) Under some circumstances, a municipality may become bound upon principles of equitable estoppel. *Kneeland v. Gilman* (1869), 24 Wis. 39; *Eau Claire Dells Imp. Co. v. Eau Claire* (1920), 172 Wis. 240, 179 N. W. 2; *Eau Galle v. Waterville* (1932), 207 Wis. 389, 241 N. W. 377, but see *Lafebre v. Board of Education of Superior* (1892), 81 Wis. 660, 51 N. W. 952.

(8) Where the statute forbids the making of a contract between a municipality and the other party, the contract is illegal, and on grounds of public policy there can be no re-

covery on principles of unjust enrichment for money, services, or goods. *Bissell L. Co. v. Northwestern C. & S. Co.* (1926) 189 Wis. 343, 207 N. W. 697, and cases cited.

The case of *School District v. Industrial Comm.* (1927) 194 Wis. 342, 216 N. W. 844, is an interesting and illustrative case. It was an action to review an award of the industrial commission, and the question was whether or not the injured person was an employee of the district. It appears that the teacher objected to building fires; that the board talked the matter over, informally, and the clerk was instructed to hire someone to build the fires. No vote was taken and no record was made providing for the hiring of any person. Pursuant to the informal talk, one Olson was hired by the clerk to build fires. For some considerable time prior to the 2d day of May, 1924, Olson had built fires and received as compensation from the district the sum of ten cents a day. On May 2d presumably while building fire using gasoline, his clothing took fire and he sustained injuries from which he died.

The question was whether he was an employee of the district within the meaning of the Workmen's Compensation Act. Sec. 102.07 (1) of that act, so far as material, declared:

"Every person in the service of the state, or . . . any . . . school district . . . under any appointment, or contract of hire, express or implied, oral or written, except any official of the state, or of any county, city, town, village, or school district therein," is an employee thereof. Sec. 102.07 (1), Stats. 1925.

Sec. 40.24, Stats. 1925, provided: ". . . No act authorized to be done by the board shall be valid unless voted at its meeting. . . ."

In accordance with the holding in *Butler v. Joint School District* (1914), 155 Wis. 626, 145 N. W. 180, the court held

that there had been no departure from the universal holding that any specific contract to be binding upon a school district must be authorized by a vote of the school board taken at a meeting of the board. The board not having taken action, it was held that Olson was not an employee; that is, there was no contract, express or implied. There was a dissent, in the course of which it is said:

"Where a workman is induced to render services, as here, to a school district, which are necessary and valuable to the district, and which are accepted by the school board with full knowledge, then a contract is implied and an action in *quantum meruit* would lie."

The real point of divergence was whether or not the statute permitted the making of a contract in any other way than that specified; that is, by a vote of the board. As was pointed out in the opinion of the court, this court had consistently held that without a vote there could be no contract because, by the terms of sec. 40.24, unless authorized by vote, it was not valid. The court had repeatedly held in case of private employers that the relationship of employer and employee did not require the making of a formal contract but arose where the service was performed in response to a request of the employer.

In the Restatement, Contracts, § 5, Comment *a,* it is said:

". . . Implied contracts must be distinguished from *quasi*-contracts [unjust enrichment], which also have often been called implied contracts or contracts implied in law. *Quasi*-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice. Such obligations were ordinarily enforced at common law in the same form of action (*assumpsit*) that was appropriate to true contracts, and some confusion with reference to the nature of *quasi*-contracts has been caused thereby."

See also discussion Quasi-Contracts and Kindred Equitable Relief, Restatement of Restitution and Unjust Enrichment, p. 14 *et seq.*

If the district had refused to pay Olson for his services, the liability of the district to compensate him upon principles of unjust enrichment would have depended upon whether or not the statute operated as a prohibition against the creation of a liability in any other than the specified way. Cases like *Lee v. Racine* (1885), 64 Wis. 231, 25 N. W. 33, in which it was held that there was no contract, do not, on the other hand, determine that there is no liability on principles of unjust enrichment. An action upon a contract is one thing, and is to be clearly distinguished from an action to recover the value of moneys, services, or goods which have been accepted by a municipality where there is no prohibitory statute involved. The divergence of view in *School District v. Industrial Comm., supra,* arose in part at least from the failure to distinguish between an implied contract and what the Restatement of Contracts calls a *quasi* contract, and what is now often referred to as unjust enrichment.

From the allegations of the complaint in this case it appears that no formal contract was entered into nor was the plaintiff's compensation fixed by ordinance. However, it does appear that the service was rendered with the knowledge, approval, and acquiescence of the common council, and that the defendant city has accepted the benefit of plaintiff's services; that the city had power to make a contract in the first instance.

This case as well as any other perhaps illustrates the difference between applying principles of ratification and allowing recovery upon the theory of unjust enrichment. If the contract made by the mayor with the plaintiff had been in fact ratified, the defendant would be liable at the contract rate if the rate had been fixed. Upon principles of unjust enrich-

ment the defendant is liable only for the amount of the benefits received. *Richland County Bank v. Joint School District* (1933), 213 Wis. 178, 250 N. W. 407. In ordinary cases, particularly those involving money and service, the amount of the plaintiff's recovery is the amount of money advanced or the reasonable value of the services rendered, but, if the service is rendered upon some project which is of no value or benefit to the city or the city only partially benefits, the city is liable only to the extent of the benefits received. The allegations of the complaint are not clear as to the nature of the project. It is described as a "Mayville City Works Project," which *prima facie* would indicate that the project was undertaken for the benefit of the city. On the basis of the principles already enunciated, it must be held that the complaint states a cause of action and that the plaintiff is entitled to recover the value of the benefits which the city received, the services having been rendered with the acquiescence and knowledge of the common council and the city having accepted the benefits. While it is said in *MacLeod v. Washburn, supra,* that the council had ratified the mayor's act, there was in reality no ratification but an acceptance of benefits. So far as liability of the defendant municipality was concerned, there was no difference in amount.

It must be held that where there is no formal ratification there is no ratification at all. Ratification by acquiescence permits the city to become liable on a contractual basis in a manner other than that specified by statute. It may, however, upon the principle stated in *Thomson v. Elton, supra,* become liable upon principles of unjust enrichment.

*By the Court.*—The order appealed from is affirmed, and cause remanded for further proceedings according to law.

FRITZ, J. (*dissenting*). In my opinion the provisions in sec. 62.26 (5), Stats., that "The council shall by ordinance

fix the compensation of employees, and may by ordinance order the same paid semimonthly;" and in sec. 62.12 (6) (c), Stats., that "No debt shall be contracted against the city nor evidence thereof given unless authorized by a majority vote of all the members of the council," are applicable and controlling in respect to the claim upon which the plaintiff seeks to recover. Those provisions are plain and unambiguous. In view of them, and in the absence of either an ordinance fixing the compensation of the plaintiff as a city employee for the services rendered, or the authorization by a majority vote of all the members of its council to contract indebtedness therefor, there is no enforceable contractual obligation,—express, implied, or *quasi,*—on the part of the city.