Hoeppner-Bartlett Co. v. Rhinelander, 142 Wis. 229.

HOEPPNER-BARTLETT COMPANY, Appellant, vs. CITY OF
RHINELANDER, Respondent.

*February 24—March 15, 1910.*

*Municipal corporations: Contracts for school buildings: Validity:
Compliance with statutes: Board of public works: Substitution
of school board: Ratification by acceptance of building.*

1. A contract for the erection of a schoolhouse for a city of the
   fourth class, which, in disregard of statutory requirements, was
   entered into by the school board instead of by the board of
   public works and was not countersigned or indorsed by the
   comptroller nor signed on behalf of the city by the mayor and
   city clerk, was not valid or binding upon the city.

2. A resolution adopted by the common council in such case, au-
   thorizing the school board to construct the schoolhouse, was
   not a valid substitution of the school board for the board of
   public works, where the council at no time determined, pursu-
   ant to sec. 925—78, Stats. (1898), that the school board should
   constitute the board of public works, and never by any official
   action attempted to dispense with the board of public works
   and itself assume the functions of that board.

3. Acceptance of the schoolhouse by the city in such case did not
   operate to ratify the acts of the school board so as to make
   the contract binding upon the city.

APPEAL from a judgment of the circuit court for Oneida
county: A. H. REID, Circuit Judge. *Affirmed.*

Plaintiff brings action to recover on a contract for the
construction of a schoolhouse alleged to have been made by it
and the defendant city through the common council and the
school board of the city. The defendant alleges that no valid
contract was made. The court awarded judgment of non-
suit. This is an appeal from the judgment.

The cause was submitted for the appellant on the brief of
*W. H. Frawley & T. F. Frawley,* and for the respondent on
that of *H. F. Steele.*

SIEBECKER, J. On March 25, 1905, the common council
of the defendant city adopted a resolution requesting the

board of education to have prepared and to present to the common council plans and specifications for a school building at a cost not exceeding $10,000. Thereafter the common council fixed the limit of cost at $12,000. Subsequently the council adopted a motion requesting the school board to call a meeting and to recommend plans for a school building at the next meeting of the council. On April 13, 1905, the school board adopted plans, and a communication was addressed to the council notifying the council of the action of the board and advising: "If the council wishes the school board to construct such building, that the school board be empowered to cause the same to be erected." At a meeting of the council a motion was adopted "that the report of the school board be accepted and that the school board be empowered to erect and construct such ward school building." Subsequently, at meetings of the school board, various changes were made in the plans and specifications, and on June 21, 1905, the board received the bids for which they had advertised pursuant to action taken therefor. These bids did not come within the $12,000 limit, and the building committee were therefore instructed by the board to submit the bids to the council. On June 24, 1905, the council, by resolution, authorized the board of education to construct the building according to the advertised plans and specifications and prescribed that the council would provide the necessary funds. On June 30, 1905, the school board, by motion, let the contract for the construction of the building to the plaintiff and instructed the building committee to have the contract properly drawn. The contract was executed the same day and is signed on behalf of the school board by its president and secretary. At the time the contract was executed a fund of $7,000 was available to meet the cost of the building. The building was constructed, and plaintiff has been paid various amounts as the construction proceeded.

Plaintiff brings this action to recover the balance alleged

to be due on the contract price, for extras under the contract, and also for the damages which plaintiff claims because of delays and interference with the progress of the construction under the contract. Prior to the filing of the claim with the council the school board had taken action for enforcing the penalties provided in the contract for the failure to complete the building at the time specified in the contract.

The answer of the defendant denies the execution of the contract by the defendant city. This denial of execution is based on the provisions of the general charter law applicable to cities of the fourth class. The board of public works of the city did not participate in the letting or execution of the contract; the contract is not countersigned by the comptroller; there is no indorsement by him that the necessary funds are on hand or provided for; and the contract is not signed by the mayor and city clerk in behalf of the city.

The statutory provisions prescribing how and by what officers such contracts are to be let and executed are contained in ch. 40a, Stats. (1898). The officers of the city to whom the statutes commit the power of erecting school buildings must perform this public function. Sec. 925—52, Stats. (1898), vests in the common council the power of erecting and constructing public buildings. If the council shall have determined to undertake such an enterprise, the estimated cost of which shall exceed $200, then such work "shall be let by contract to the lowest responsible bidder," in the manner and upon the conditions of sec. 925—90, by the board of public works or such officers as shall be designated to discharge its duties. Sec. 925—78 empowers the council by a two-thirds vote of its members to designate other public officers or another board to perform the functions and duties of the board of public works; but the record in this case discloses nothing to show that the common council of the defendant city has taken any steps to dispense with the board of public works or to designate any other public officers or any

board to exercise its functions and to perform its duties.
Under these circumstances the board of public works was the
only municipal agency clothed with the powers and the·duty
of taking the prescribed statutory steps for letting this public
work in the manner and upon the conditions provided in the
law.   Upon compliance with the requirements of the law or
a report thereof to the council, pursuant to sec. 925—91, the ·
common council may direct the letting of the work to a com-
petent and reliable bidder, and the contract may be executed
by the mayor and clerk under sec. 925—93, which provides
that it shall not be so executed "until the comptroller shall
have countersigned the same and made an indorsement
thereon showing that sufficient funds are in the treasury to
meet the expense thereof or that provision has been made to
pay the liability that will accrue thereunder."   It is further
provided that "no such contract shall be valid until so coun-
tersigned."   Sec. 925—45.

It is manifest from the foregoing statement of the facts,
and it is conceded by the appellant, that the plaintiff and the
defendant wholly failed to comply with the provisions of
these statutes, which provide the mode of contracting by the
city.   It is, however, contended that the common council
had power to erect public buildings, and that its action au-
thorizing the school board to act for the city in letting the
contract was a valid substitution of the school board for the
board of public works.   It appears by the record of the pro-
ceedings that the council at no time determined, pursuant to
sec. 925—78, that the school board should constitute the
board of public works; nor did it ever by official action at-
tempt to dispense with the board of public works and itself
assume to exercise the duties and powers of such board.
The city attorney, the comptroller, and the engineer were
therefore the duly constituted members of the board of pub-
lic works, and as such the only municipal agency authorized
to perform its duties and powers.   It is undisputed that they

took no steps whatever in securing the plans and specifications or the bids thereon or in the erection and construction of this public building. We also find that the requirements of secs. 925—45 and 925—93, providing that the mayor and clerk shall sign the contract after the comptroller shall have certified that provision has been made to meet the liability to accrue under it and providing for such countersigning, were wholly disregarded and omitted in this case. The necessity of complying with the provision of the statutes regarding countersigning by the comptroller in the making of contracts by the city is evident from sec. 925—45, which declares that "no such contract shall be valid until so countersigned." This legislative provision clearly made it mandatory on the city to comply with this requirement in order to make a valid contract for the erection of this public building. It is well recognized that the power of a city to make contracts is conditioned upon substantial compliance with the charter provisions on the subject.

"The general rule is that a municipality is without authority to make a contract having any vitality whatever otherwise than for the objects and in the manner prescribed by law, and that one in form entered into in any other manner than substantially that provided by law, where the provisions in that regard are coupled with a prohibition to otherwise contract, imposes no liability on the municipality, even though it is performed by the opposite party." *Chippewa B. Co. v. Durand,* 122 Wis. 85, 96, 99 N. W. 603, and cases cited; *Appleton W. W. Co. v. Appleton,* 132 Wis. 563, 113 N. W. 44.

The statutory requirements to contract for the erection of this schoolhouse are very explicit and definite, and, since they have been disregarded in the essentials pointed out, it inevitably follows that the alleged contract was of no force or validity and therefore created no binding obligation on the city.

It is, however, asserted that acceptance of the schoolhouse

by the city operated to ratify the acts of the school board and thus made the agreement a binding obligation. This amounts to the claim that the acts and conduct of the city ratified the agreement and hence that the city is liable thereon. The principle of ratification cannot apply where there is nothing in existence to ratify. Since the acts relied on are wholly insufficient to create a valid contract by the city, they cannot be made the basis for a contractual liability by virtue of an acceptance of the building. *Chippewa B. Co. v. Durand, supra.* We therefore find no grounds upon which the city can be held liable upon the alleged contract relied on in this action. The complaint is restricted to a recovery on this contract and therefore states no cause of action.

The trial court properly ruled that no contract had been proved and that the complaint should be dismissed.

*By the Court.*—Judgment affirmed.

BARNES, J., took no part.