MacLeod, Respondent, vs. City of Washburn, Appellant.

*September 14—October 10, 1922.*

*Attorney and client: Representing defendants interested but not adverse: Compensation: Reasonableness: Employment by municipalities: Ratification: Termination.*

1. In an action by property owners against a city and certain contractors to set aside special assessments, in which it was claimed that the assessments were void and that a reassessment was necessary under sec. 75.56, Stats. 1921, because they were not made before the contract was entered into, as required by sub. (9), sec. 62.18, but in which there was no issue as to the validity of the contract, there was no conflict between the interests of the city and those of the contractors precluding the attorney for the contractors from acting in a similar capacity for the city.

2. A resolution of a city council discontinuing an attorney's services on behalf of the city constitutes a ratification on the part of the council of the action of the mayor of the city in employing the attorney to represent the city in actions against it.

3. Where ten separate actions were brought against the city and the contractors to set aside the special assessments, the attorney for the contractors being employed by the city to represent the city in such actions, and such attorney, in addition to representing the city in the trial of one of the actions and making the necessary preparation therefor, having advised the city authorities in the making of the reassessment, a charge of $500 against both the contractors and the city and the apportionment of one half thereof to the city is not unreasonable.

Appeal from a judgment of the circuit court for Bayfield county: G. N. Risjord, Circuit Judge. *Affirmed.*

This action was brought by the plaintiff, an attorney at law, to recover the value of professional services rendered

by him in and about the defense of certain actions brought against the city of *Washburn* by property owners of said city to set aside certain special tax certificates. The action was tried by the court, a jury having been waived, resulting in the following findings of fact and conclusions of law:

"That sometime prior to June 9, 1919, the city of *Washburn* has caused sewers to be constructed and attempted to assess benefits and damages against the abutting property owners. The sewers were constructed by the Gray-Robinson Construction Company and E. M. Scheflow. That on said June 9, 1919, a number of the property owners against whose property part of the cost of the construction of the sewers was assessed and certificates issued, commenced actions in this court for the purpose of setting aside the assessment on the ground that the proceedings taken by the city leading up to the letting of the contracts and the issuing of certificates were defective and the certificates issued illegal and void. That the said Gray-Robinson Construction Company, E. M. Scheflow, the city of *Washburn,* and the county of Bayfield were made defendants in these actions and, upon a hearing had in the circuit court, the court found the proceedings defective and an order was made in June, 1920, for reassessment of the benefits and damages under the statute. That a reassessment was subsequently made and a much smaller amount of the cost of the construction was assessed as benefits against abutting lots than had been assessed originally.

"That the plaintiff, an attorney at law, located at the city of *Washburn,* Wisconsin, had prior to the time of the commencement of said actions acted in some matters as attorney for the Construction Company and E. M. Scheflow, and when the actions were brought by the property owners, ten in number, the plaintiff was employed by the said Construction Company and Scheflow as their attorney in those actions. That the defendant city had no regular attorney at the time, and when the process was served upon the city its then mayor requested the plaintiff in this case to act also as attorney for the defendant city, and that the said mayor knew at the time that the plaintiff in this case was acting also as attorney for the Construction Company and Scheflow. That the plaintiff prepared answers on behalf of

the city and had the answers verified by the city clerk, and proceeded to represent the city as well as the Construction Company and Scheflow, the answers on behalf of all the defendants that appeared being practically identical. That when the reassessment was ordered, the city authorities did not act promptly and the plaintiff in this case appeared at different times before the city council and urged that the city take steps to make the reassessment, which the city finally did, as stated above. That a committee of the city council for that purpose at some subsequent time recommended that the city pay a portion of the cost of construction to the Construction Company, under a compromise arrangement apparently with the Construction Company. This recommendation appeared by the record of the council proceedings to be adopted, but according to a subsequent action of the council it was not in fact adopted but *mandamus* proceedings were commenced on behalf of the Construction Company, the plaintiff in this case acting as attorney, attempting to compel the then mayor of the city to issue an order for the amount the committee had recommended. The alleged compromise and agreement on behalf of the city to pay the amount agreed on and proceedings to compel such payment were all had after August 3, 1920, at which time the following resolution was passed by the defendant city council: 'Moved and seconded that *A. W. MacLeod,* who has been retained by the city in actions of John Love *et al.* v. E. M. Scheflow and the Gray-Robinson Construction Company and city of *Washburn,* be notified that his services in behalf of the city be discontinued;' after which time plaintiff performed no further service for the city. That no other formal action was taken by the defendant city council in the matter of the employment of the plaintiff as its attorney.

"That at the time the plaintiff was requested to act for the city by the then mayor there was merely a possibility that the interests of the city and the Gray-Robinson Construction Company and E. M. Scheflow might become adverse and antagonistic and there was no antagonism between the two until the city neglected and refused to make the reassessment and until about the time the plaintiff was discharged by the resolution above referred to.

"That the plaintiff filed claim against the city for his fees,

as attorney for the city, in the sum of $250, being $25 in each case, which I find not to be an exorbitant charge for the services rendered."

### Conclusions of law.

"That plaintiff was duly employed by the defendant city to perform legal services in the actions above referred to.

"That the interests of the Gray-Robinson Construction Company and Scheflow and the defendant city were not, up to the time plaintiff ceased acting, in fact, as attorney for the city, so diverse and antagonistic as to estop plaintiff from recovering for services rendered before the interests of the contractors and city became diverse.

"That the amount claimed for services is not unreasonable, and that plaintiff is entitled to judgment against the defendant city for the sum of $250, with interest thereon from November 9, 1920, being the date upon which the claim was disallowed by the city council. Let judgment be entered with costs."

From a judgment so entered the defendant city brings this appeal.

*John J. Fisher* of Bayfield, for the appellant.

For the respondent there was a brief by *Lamoreux & Cate* of Ashland, and oral argument by *C. A. Lamoreux.*

OWEN, J. Appellant contends that the judgment should be reversed (1) because the interests of the city and of the contractors, whom the plaintiff represented in the actions to set aside the special assessments, were antagonistic, and that plaintiff could not represent both the city and the contractors in those actions; (2) that there was no lawful contract of employment by the city; and (3) that the amount of the recovery is exorbitant.

1. We can see no conflict between the interests of the city and the interests of the contractors in the defense of the action brought to set aside the special assessments. The interests of both the city and the contractors required that the special assessments be sustained. It is argued that the

contract between the city and the contractors for the construction of the sewers was void because the contract was entered into before the assessment against the lots and parcels of land fronting or abutting on the work was made, contrary to the provisions of sub. 1, sec. 925—216, of the Statutes of 1919, sub. (9), sec. 62.18, of the Statutes of 1921, and that it was in the interests of the contractors to sustain that contract while the interests of the city required that it be declared null and void. This contention entirely overlooks the fact that the validity of the contract was not in any manner involved in the taxpayers' actions. It was the validity of the assessments and not the validity of the contract that was there involved. The validity of the contract was in no manner tendered by the issues joined and the court was without power to pass upon the validity of the contract and, in fact, did not assume to do so. That the interests of the city and of the contractors in upholding the special assessments challenged in said actions were mutual and identical readily appears by a consideration of sec. 1210d, Stats. 1919, which provides that where special assessments are set aside after the work of constructing any sewer has been done for failure to make a proper assessment of benefits and damages because of failure to observe any provision of law or because of any defect in the proceedings upon which such assessments are based, or because of any provision contained in the contract for doing such work, not authorized by law, the city authorities shall proceed to make a new assessment of benefits and damages in the manner required by law. Such new assessment is made a lien upon the property "and a certificate to that effect shall be issued by the proper city authorities to the holder of the invalid special assessment certificate . . . upon surrender thereof or proof that it has been canceled, . . . and the excess in the amount of such invalid certificate over such new certificate, if any, shall be paid to such holder, or person, out of the proper fund." Sec. 1210d, Stats. 1919;

sec. 75.56, Stats. 1921. The court vacated the special assessment because the contract was made before the special assessments were levied. This constituted a "defect in the proceedings upon which such assessment, certificate, sale or bond" was based and brought it squarely within the provisions of sec. 1210d, which, as we have seen, requires a new assessment, the delivery of a new certificate to the contractors, and payment to them of the difference between the invalid certificate and the new certificate out of the proper fund.

How the interest of the city in sustaining the special assessments challenged in those actions can be any less or any different from that of the contractors is not apparent. Plainly the statute contemplates that the work shall be paid for. If the new special certificate shall not equal in amount the invalid certificate, then the balance shall be paid by the city out of the proper fund. It seems to be assumed that because the city officers failed to do their duty and proceed with the reassessment, making it necessary for the contractors to invoke the compulsory powers of the court, a diversity of interest thereby arose. In this assumption appellant's counsel fails to distinguish between the interest of the city and the perverse action of its officers. The fact that the city officers refused to perform their plain legal duty, a duty imposed upon them by the statute as well as by the order of the court, did not give rise to a conflict between the interest of the city and the interest of the contractors. The interest of the city required the making of a *bona fide* reassessment, and the refusal of the city officers to proceed therewith was contrary to the interests of the city as well as the interests of the contractors, and in their refusal to function they acted contrary to the interests of both. Whether the contract was void is not before us. Neither was it involved in the actions brought to set aside the special assessments, nor could it in any manner influence the legal duty of the city officers. It is and was at all times

an irrelevant consideration. It is plain that there was no conflict of interest between the city and the contractors, and the plaintiff in this action was at liberty to represent the city and the contractors in the defense of the action brought to set aside the special assessments.

2. It is claimed that no lawful contract of employment was entered into between the city and the plaintiff. It is true that the common council took no action looking towards the employment of plaintiff. It was, however, entirely competent for the city, acting through the common council, to employ plaintiff or any other attorney to defend those actions; it being competent for them to enter into such a contract, it was competent for them to ratify it. That they had knowledge of his employment and acquiesced therein is manifest by the resolution adopted by the common council August 3, 1920, discontinuing plaintiff's services on behalf of the city. This resolution acknowledges his lawful employment by the city and indicates a ratification on the part of the council of the action of the mayor in employing plaintiff to defend the cases on the part of the city. "A municipal corporation may ratify the unauthorized acts and contracts of its agents which are within the scope of its corporate powers, and such ratification is equivalent to previous authority." *Koch v. Milwaukee*, 89 Wis. 220, 228, 62 N. W. 918.

3. It is claimed that the amount recovered by the plaintiff is unreasonable. He was employed in and about the defense of ten actions. The complaints challenged the validity of the assessments upon numerous grounds. True, only one action was tried, and similar answers were served in all. The preparation of the case, however, involved a careful investigation of the proceedings leading up to the assessments, a carefully prepared brief, advice to the city authorities in the making of the reassessment, and one day actually devoted to the trial. The trial court found that a charge against all the clients of $500 was reasonable. We

do not think this finding can be disturbed. While this was a liberal charge, we think the finding that it was reasonable cannot be set aside.

It is next contended that, granting the charge of $500 to be reasonable, the city should be charged with only one third thereof. The interest ,of the city was equal to the interest of both the contractors, and we think the charge was properly apportioned one half to the city and one half to the contractors. We see no error justifying a reversal, and the judgment should be affirmed.

*By the Court.*—Judgment affirmed.