JOURNAL PRINTING COMPANY, Appellant, vs. CITY OF RACINE and others, Respondents.

*December 6, 1932—January 10, 1933.*

For the appellant there was a brief by *Beck, Smith & Heft* of Racine, and oral argument by *L. H. Smith.*

*Cornelius Colbert* of Racine, for the respondents.

FOWLER, J. The case is before the court upon appeal from an order of the circuit court for Racine county sustaining a demurrer to an amended complaint which alleges that the city engaged the plaintiff to print the common council proceedings and do miscellaneous advertising and furnish pamphlets of the council proceedings in accordance with a custom of ten or twelve years' duration; that the plaintiff began performing the service; that it performed such services from May 23 to December 5, 1930, which were reasonably worth $2,905.55, of which only $455.90 was paid; and that the city refuses to make any further payments. Judgment is demanded for $2,449.65.

The matter of the publication of the council proceedings and doing the city advertising is governed by statute. Sec. 62.10, Stats., provides for advertising for bids containing separate proposals to publish the proceedings and doing the advertising and that the successful bidder shall execute a contract and file such bond as the council shall require; that no paper shall receive *more or less* than the contract price nor any other compensation for the work; and that "the paper securing the contract . . . shall be the official city newspaper." Secs. 62.09 (10) and 62.15 (12) designate how all contracts of the city shall be executed and countersigned. Sec. 62.11 (3) (d) provides that an "aye" and "nay" vote shall be taken on any measure creating a liability. Sec. 331.25 fixes the maximum legal rate for publishing any notice or advertisement required to be published by law at not over one dollar per folio for the first insertion and seventy cents for any subsequent insertion.

We must take judicial notice of these statutes. It seems plain that when the statutes require specified legal steps to be taken or formalities to be followed in the making of a municipal contract there must be an allegation that these steps have been taken and these formalities followed in order to allege the creation of a contract, even though as between individuals an allegation that one engaged another to perform services and that he performed them would state a cause of action for recovery of their reasonable value. Many Wisconsin decisions support this view. They go to the extent of preventing recovery for construction of buildings, pavements, school houses, bridges, and other public improvements when statutory provisions like those here involved are ignored. *Hoeppner-Bartlett Co. v. Rhinelander,* 142 Wis. 229, 125 N. W. 454; *Chippewa Bridge Co. v. Durand,* 122 Wis. 85, 99 N. W. 603; *MacLeod v. Washburn,* 178 Wis. 379, 190 N. W. 124; *Lee v. Racine,* 64 Wis. 231, 25 N. W. 33; *School District v. Industrial Comm.* 194 Wis. 342, 216 N. W. 844; *Appleton Waterworks Co. v. Appleton,* 132 Wis. 563, 113 N. W. 44; *Harris v. Joint School District,* 202 Wis. 519, 233 N. W. 97; *Neacy v. Milwaukee,* 171 Wis. 311, 176 N. W. 871. In *Wagner v. Milwaukee,* 196 Wis. 328, 220 N. W. 207, the payment for publication of council proceedings "without the intervention of a formal contract" was enjoined.

The appellant seeks to avoid the effect of these decisions by saying that they go upon the idea of preventing fraudulent violation of statutory requirements and do not cover innocent and harmless failure to follow them, and that as here no injury resulted to the city through the ignoring of statutory requirements; recovery for the reasonable value of the services of which the city has received the benefit should be allowed. This ignores the provision of sec. 62.10 that no paper shall receive more or less than the contract price fixed by competitive bidding, and ignores failure to allege

that the reasonable value is within the maximum price for official publications fixed by sec. 331.25. But passing these points the cases relied upon by appellant do not support its contention. These cases are readily distinguished. *Thomson v. Elton,* 109 Wis. 589, 85 N. W. 425, is to the effect that recovery may be had for money borrowed by town officials on representation to the loaner and relied on by him that the officials were duly authorized to make the loan, where the money was all used for lawful town purposes. The correctness of the decision is doubted as an original proposition, and it is upheld solely upon the rule of *stare decisis.* The rule is limited to cases for the return of money or property of which the municipality has received the full benefit. *Rice v. Ashland County,* 114 Wis. 130, 134, 89 N. W. 908; *Schneider v. Menasha,* 118 Wis. 298, 301, 95 N. W. 94.

*Murphy v. Paull,* 192 Wis. 93, 212 N. W. 402, held that where money was borrowed from a bank by village authorities to complete and was used to pay for completion of a municipal lighting service for which insufficient funds had been voted originally, and the fact of the expenditure was known to the electors and acquiesced in by them, of which service the village had long received and was still receiving the use, action lay for recovery of the money. It is pointed out in this case that the circumstances were such that competitive bidding was impossible.

*MacLeod v. Washburn, supra,* comes nearer than any other case to supporting the contention of appellant. It was an action to recover for services of an attorney in litigation connected with assessments for construction of a sewer. There was no elected or appointed city attorney and the mayor had engaged the plaintiff to defend ten suits against the city. The city council knew of and acquiesced in the employment and the performance of the services, and finally by resolution acknowledged the lawful employment of the

attorney and discontinued his services. The court held this to be a ratification by the council of what it had authority to do in the first instance and upheld the plaintiff's action to recover the reasonable value of the services. Manifestly competitive bidding is not practical or feasible in such a case. The employment by the council of special counsel to take charge of matters in which the city is interested was at the time expressly declared by statute and no restrictions hedged the method of contracting for his services. Sec. 62.09 (12), Stats. 1921. Quotations from other cases are given in appellant's brief, notably *Dekorra v. Wisconsin River Power Co.* 188 Wis. 501, 507, 205 N. W. 423, and *Chicago, St. P., M. & O. R. Co. v. Black River Falls,* 193 Wis. 579, 586, 214 N. W. 451, 215 N. W. 455, which on their face lend color to appellant's contention, but these statements must be considered in connection with the facts involved. Competitive bidding or violation of statutes expressly requiring it was not involved in the contracts under consideration in these cases. It is pointed out in *Wagner v. Milwaukee, supra,* at p. 331, that—

"Whenever a city charter requires public work to be let to the lowest bidder 'it has been uniformly held that the failure to call for bids in the prescribed way . . . is fatal to the proceeding.' . . . 'The law requiring contracts to be let to the lowest bidder is based upon public economy. . . . It is of great importance to taxpayers, and ought not to be frittered away by exceptions.' . . . The legislature having seen fit to hedge about municipal action by restrictions so obviously of value to the body politic, it is not for the courts to alter or vary them."

*By the Court.*—The order of the circuit court is affirmed.