MARATHON COUNTY, Appellant, vs. INDUSTRIAL COMMISSION and others, Respondents.

*March 12—April 7, 1937.*
*September 17—October 12, 1937.*

The cause was submitted for the appellant on the briefs of *O. L. Ringle* of Wausau; for the respondent Industrial Commission on the brief of the *Attorney General* and *Mortimer Levitan,* assistant attorney general; and for the respondents Gleason on the briefs of *Brayton E. Smith* of Wausau, attorney, and *Quarles, Spence & Quarles, Kenneth Grubb,* and *Jefferson Burrus,* all of Milwaukee, of counsel (on rehearing).

The following opinion was filed April 7, 1937:

FOWLER, J. This action was brought to vacate an award of compensation by the Industrial Commission under the Workmen's Compensation Act. A minor son of the applicants was working upon a county trunk road in Marathon

county and sustained an injury to his hand. Infection set in from which he died. The father had received supplies through the federal agency administering drought relief, and had agreed "in repayment thereof, to work sufficient hours on county or town roads, or on any other such projects in Marathon county as may be approved by the Wisconsin emergency relief administration or its agents." The case was before the court in 218 Wis. 275, 260 N. W. 641, on appeal from a judgment of the circuit court for Dane county. An award had been made against the county by the Industrial Commission under the compensation act and affirmed by the circuit court. This court considered that the record did not support the award because certain facts were not shown which this court deemed essential to liability, and the case was reversed with directions to the circuit court to vacate the award and remand the record to the commission "for the taking of further evidence to the end that compensation may be awarded if any facts are disclosed that warranted it." Further evidence has been taken by the commission, and the commission has made a second award, the circuit court has affirmed that award, and the county has appealed from the judgment of affirmance.

(1) It is stated in the former opinion of this court that if the work being done by the decedent when he was injured was repair work, such as the county highway commissioner or the highway committee of the county board might properly order without action of the county board, the county would be liable for compensation, irrespective of other matters. The present record shows that the work was entirely new construction, such as can only be authorized by the county board itself, as pointed out in the original opinion of the court. Recovery therefore depends on whether the facts existed at the time of the injury that are essential to fix liability upon the county for work done by direction of the

Wisconsin emergency relief administration or its agents in administering the federal drought-relief program. For a more detailed statement of those facts than we deem necessary to restate here, we refer to our former opinion. Two of the facts there stated as necessary to fix such liability are that the county board of plaintiff county had adopted the drought-relief program, and that it had by appropriate action assumed liability under the Workmen's Compensation Act for injuries to workmen engaged in working out drought-relief contracts on county roads. The only facts disclosed by the present record that were not included in the former record that could have any possible bearing on the two ultimate facts above stated are two resolutions adopted by the county board.

One of the resolutions above referred to was adopted on April 19, 1934, five days before the decedent was injured, and reads as follows:

"Resolution—Re Drought Relief. Resolved, by the Marathon County Board of Supervisors that it is the sense of this board that the drought relief extended to various farmers be worked out in the various towns and villages where the recipient of such relief resides." . . . .

The other resolution referred to was adopted on July 18, 1934, about seven weeks after the decedent was injured. It recited that the question of carrying insurance for the protection of workers on relief pay rolls had been discussed at various county board meetings without any conclusion being reached; that liability attached to the county under various drought-relief projects for injuries sustained by employees on such projects; and "Resolved"' that the county would not take out indemnity insurance against liability for such injuries but would carry its own risk on all relief projects.

It was held in our former opinion that adoption of the drought-relief program and assumption of liability under the Workmen's Compensation Act could only be effected by ap-

propriate action by the county board itself, as distinguished from action by the county highway commissioner or the county highway committee acting as an agent of the Wisconsin emergency relief administration. We are unable to perceive that either of the two resolutions above mentioned, or the two of them together, constitute action by the county board prior to the time decedent was injured that assumed liability under the Workmen's Compensation Act. If it be conceded that the combined effect of the two resolutions was to adopt the drought-relief program and assume liability for compensation under the act to drought-relief workmen who should be injured after the adoption of the last resolution, it did not assume responsibility for compensation to drought-relief workmen injured before the passage of that resolution who had been put to work by the county highway commissioner acting as an agent of the Wisconsin emergency relief administration, without previous action by the county board authorizing him to put them to work and assuming responsibility for injuries to them under the act. As the decedent was injured before the passage of the last resolution, the county sustained no liability for his injury or his resulting death, and the application to the Industrial Commission for compensation should have been dismissed.

*By the Court.*—The judgment of the circuit court is reversed, and the record is remanded with directions to enter judgment vacating the award.

A motion for a rehearing was granted, without costs, on May 25, 1937.

The following opinion was filed October 12, 1937:

FOWLER, J. (*on rehearing*). An opinion was filed herein (on April 7, 1937) and a mandate entered reversing the judgment of the circuit court and directing judgment vacat-

ing the award. On motion of the defendants a rehearing was granted and the case was submitted upon briefs filed.

It is said in that opinion that "The only facts disclosed by the present record that were not included in the former record that could have any possible bearing" on the decision there rendered were "two resolutions adopted by the county board." The resolutions there referred to are those hereinafter set out, adopted on April 19 and July 18, 1934.

It is thus apparent that when the opinion of April 7th was filed herein the court did not have in mind a resolution of the county board hereinafter set out which was adopted on January 20, 1934. Whether the writer was at fault for this, or appellant's counsel for not setting it out in the printed case, or the respondents' counsel for not setting it out by supplemental case, or for not particularly or more particularly calling attention to it, is immaterial. Having been brought to our notice on the motion for rehearing, we should now give such effect to it toward supporting the award of the Industrial Commission as may reasonably be given. Giving it such effect, the court is of opinion that the mandate of the court previously entered herein should be vacated and one substituted affirming the judgment of the circuit court confirming the award.

The case was before the court in April, 1935. The opinion then filed is reported in 218 Wis. 275, 260 N. W. 641. The judgment of the circuit court confirming an award of the commission was then reversed, with directions to remand the record to the commission "for the taking of further evidence to the end that compensation may be awarded if any facts are disclosed that warrant it."

The basis of the award as first made was that the county had adopted the drought-relief program referred to in the previous opinion, and had agreed to procure workmen's compensation to protect persons working out drought-relief con-

tracts, and had thus made the deceased an employee of the county under "a contract of hire express or implied" and liable under the compensation act. We held that action of the county board to that effect was necessary to produce this result, and that the only action respecting the matter disclosed by the record was taken by the county highway committee and the county highway commissioner. We pointed out in the 1935 opinion three situations under which the county might be liable : The deceased might have been doing maintenance work on a county trunk road, in which situation the county highway commissioner had authority to put the deceased to work without being previously expressly authorized by the county board to do so; he might have been engaged in construction work on a county trunk highway which the county board had previously authorized, in which case the highway commissioner would have been authorized to set him to work; or a state of facts might exist in which the county would be estopped from claiming that the deceased was not an employee of the county.

When the matter came before the commission on remand of the record pursuant to the judgment of the circuit court pursuant to the mandate of this court, the commission found that the deceased was engaged on construction as distinguished from maintenance work, and that, while there was no evidence in the record that the county board had directly and expressly directed that construction work be done on the road when the deceased was injured, it had adopted the road as a part of the county trunk system, and construction work had in fact been commenced on it in December, 1932, or January, 1933, and had been since carried on as if it had been so directed. The commission also found that the county board "intended to adopt the drought-relief program," by adoption of three resolutions to which it refers in its findings, two of which were adopted before the de-

ceased was put to work and the third shortly thereafter. These three resolutions will here be stated.

The first was adopted on January 20, 1934, three months before the deceased was put to work by the highway commissioner. It recited that "Whereas" Marathon county was one of the counties "in the drought-relief area;" and "Whereas" the federal emergency relief administration had appropriated $186,636 to Marathon county to be distributed in the form of "feed purchase orders" to farmers who qualify for relief; and "Whereas" the committee of the county board on "salaries and fees" had been designated by the federal emergency relief administration as the "Federal Relief Committee" of the county, and had "manifold duties in carrying out the expressed wishes of the federal emergency relief administration;" and "Whereas" "the duties of this work would necessitate full-time employment, and no compensation has been provided from any source" for the payment of persons in such employment; and "Whereas" these duties were a part of the duties of the county agent's office, and performance of them required two additional employees; it was "Resolved" that the county agent employ and certify two employees to perform such duties, and that they be paid $4 per day by the county.

The second resolution above referred to was adopted on April 19th, a few days before the deceased was set to work. As introduced it reads:

"Resolution—Re Drought Relief. Resolved, by the Marathon County Board of Supervisors that it is the sense of this board that the drought relief extended to various farmers be worked out in the various towns and villages where the recipient of such relief resides."

After being amended by insertion of the phrase "as far as practicable," it was adopted on the day of its introduction.

The third resolution was adopted on July 18, 1934, three months after the deceased was put to work. It could not of itself operate to authorize his previous employment, but it has important bearing on the propositions whether the county board intended to adopt the drought-relief program as the Industrial Commission found, and whether it knew that persons were being employed on county roads under drought-relief contracts. It was headed: "Resolution—Re Liability Insurance," and recited that "Whereas" the question of carrying insurance for the protection of workers or employees of Marathon county upon relief projects had been discussed at various previous board meetings, and "no definite conclusion upon said question" had been reached; and "Whereas" the premiums quoted seemed exorbitant and from past experience the county would save money by carrying its own risk; it was "Resolved" that no such insurance be procured, "and that the county carry its own risk upon all such *drought-relief* projects."

The resolution of January 20th by its terms shows that the board was fully apprised of the nature of the drought-relief program. It authorizes the employment and payment from county funds of two employees to add to the force of the county agent's office to do the work entailed upon the office by that program. It evidences that the county board knew of that program, that it was operating in the county, that the county was receiving benefits from it, and was hiring employees to do the work entailed by the operation of that program. It shows that the board intended to accept the benefits consequent to the county upon acceptance of that program, and, in connection with the resolutions of April 19th and July 18th, compels the inferences of fact that the county board intended to and did accept the benefits of that program. The county board intended to adopt the drought-relief program, and understood that it had adopted

it and was liable for injuries to workers "on various drought-relief projects." It knowingly accepted the benefits accruing to the county from the acceptance of that program by having drought-relief orders worked out on county projects. Knowingly and purposely accepting the benefits resulting to the county from the operation of the drought program imposed assumption of the responsibilities consequent upon its acceptance, and one of the responsibilities was payment of compensation to workmen as provided by the Workmen's Compensation Act. We are of opinion that the county is clearly estopped from claiming that it is exempt from the responsibilities consequent upon adoption of the drought-relief program because it did not by formal resolution expressly adopt that program. That a private individual would be held estopped under like circumstances from repudiating the responsibilities attached to the acceptance of benefits which he had purposely and knowingly accepted there would seem to be no doubt. The doctrine of estoppel applies to municipalities as well as individuals. *State ex rel. Knapp v. Pohle,* 185 Wis. 610, 614, 202 N. W. 148, cited in our 1935 opinion herein; *Milwaukee E. R. & L. Co. v. Milwaukee,* 209 Wis. 668, 672, 245 N. W. 860.

The contention of the respondents that the resolution of July 18th constituted a ratification of the acts of its highway committee and highway commissioner referred to in our 1935 opinion, is perhaps not well taken. Respondents' contention is based chiefly on *MacLeod v. Washburn,* 178 Wis. 379, 190 N. W. 124. But, as pointed out in *Shulse v. Mayville,* 223 Wis. 624, 271 N. W. 643, in the *MacLeod Case,* while the act of the council therein involved was treated by the court as a ratification, it was really an acceptance of benefits. If strictly construed, the resolution of July 18th was not a ratification of the acts of the highway officials of the county under the rule of the *Shulse Case,* that where there is

no formal ratification there is none at all, there was here an acceptance of benefits. This in that case rendered the city liable for the compensation imposed by law from that acceptance. Here compensation under the Workmen's Compensation Act is imposed by law by acceptance by the county of the benefits accruing to it from the working out of drought-relief contracts on county roads. The responsibility follows, not from ratifying the agreement of the county highway committee referred to in the 1935 opinion, but by operation of law from accepting the benefits of work for which the committee agreed to take out workmen's compensation insurance.

The appellant strenuously contends, as heretofore, that the son of the applicants was not an employee of the county but of the federal emergency relief administration. That contention is ruled against it by our decision in *Sauk County v. Industrial Comm., ante*, p. 179, 273 N. W. 515. He was as plainly an employee of the county as was the deceased there involved.

*By the Court.*—The original mandate herein is vacated, and a mandate substituted affirming the judgment of the circuit court confirming the award.

FRITZ, J., dissents from decision subsequent to rehearing.

A motion to modify the mandate was denied, without costs, on December 7, 1937.