LINCOLN COUNTY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*April 14—May 17, 1938.*

*L. A. Pradt, Jr.,* of Wausau, for the appellants.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

*Carlyle B. Wurster* of Merrill, for the respondent Arthur Nelson.

FRITZ, J.   The award of compensation, which the plaintiffs seek to have set aside, was based on injuries and disability sustained by Nelson while returning from work on November 6, 1937, upon the overturning of a truck furnished by Lincoln county to transport him and fellow workmen from the county's wood lot to the city of Merrill, where they resided.   Until he was laid off on October 3, 1937, Nelson was a railroad employee, and when he received his last pay check on October 28, 1937, he applied to the Lincoln county relief office for employment on the county's wood lot, which he understood was available to unemployed ablebodied men who would otherwise be entitled to direct relief from the county.   At that office he was told that he first had to use the amount of that check.   After he did so, he again applied at the county's office, where a work card was issued to him to work for the county for the period of two weeks. On November 1, 1937, he presented the card to the county's foreman at its wood lot, and the latter put Nelson to work, at which he put in a total of thirty hours, up to the time of his injury, under the foreman's supervision and control, and for which the county paid him $12.   At the lot the county had the men cut wood for its use in heating its buildings, and for distribution to relief recipients; and it sold the sur-

plus to private parties. The county, under a resolution of the county board and the adopted practice of its poor-relief committee, furnished work instead of relief to all able-bodied unemployed men who were in need thereof. Able-bodied relief applicants were required to work to earn their relief-budget requirements. Those entitled to the maximum budget, because they had a family, worked five days of seven hours each at forty cents per hour, or a total of $56 per month, for which the county gave them its pay checks, which they were expected to use in paying their current accounts at local stores. If they did not do so, the relief department would see that they paid the accounts out of their next check. But, incapacitated relief applicants were furnished supplies on the same family-budget basis. In connection with those facts, the Industrial Commission found that the county received the benefit of the work done by Nelson and the other workmen; that through the use and sale of the wood so produced the county's expense of caring for the unemployed was materially reduced; and that Nelson "was an employee of Lincoln county within the meaning of the Workmen's Compensation Act."

The plaintiffs contend that, under the evidence, the commission's finding that Nelson was such an employee of the county is purely a question of law; that he was not such an employee, but a relief worker dependent wholly upon the county for his support, whom it was obligated by statute to support; and that he was working on a purely relief project open only to relief workers at a wage sufficient only to supply his necessities. In that connection the plaintiffs claim that it is immaterial whether the relief work was obligatory or voluntary, or whether it was beneficial to the county or under its control, and in support of their contentions they cite *West Milwaukee v. Industrial Comm.* 216 Wis. 29, 255 N. W. 728, and cases in other jurisdictions.

The decision in the *West Milwaukee Case* is not in point. True, Yunker (for whose death an award was sought under the Compensation Act) was injured while doing "made-work" for West Milwaukee, of which he was a resident; and, because he volunteered to do that work, relief, which he had been receiving from Milwaukee county in the form of monthly supplies, valued at $27.16, was changed to $3.16 in supplies and $24 in cash, if he worked forty-eight hours monthly. But our conclusion that Yunker was not an employee (within the meaning of the Compensation Act) of either Milwaukee county or the village of West Milwaukee was not based on the ground that he was a relief worker entitled to and dependent upon support by the county, or that he was working on a relief project open only to relief workers at a wage sufficient only to supply his necessities. On the contrary, we held that he was not an employee of either the county or the village, within the meaning of the act, because on the one hand he was not performing any work for the county; and on the other hand he was not working under any appointment by, or contract of hire, express or implied, with the village. Thus, in respect to the first of those grounds, we said (p. 33),—

"His relationship with the county was solely that of a dependent person who was receiving relief and support which the county was obliged to provide for him under ch. 49, Stats., and he was in no manner or respect in its service. He did nothing whatsoever for Milwaukee county or at its request. The 'made-work' which he voluntarily performed was solely for the benefit of West Milwaukee, and without any legal obligation, contractual or otherwise, on his part to work for either of the municipalities, or, on the part of either, to compensate him therefor."

And in respect to the second ground, we said (p. 33),—

".  .  .  he was not in its [West Milwaukee's] service 'under any appointment, or contract of hire, express or im-

plied,' as is necessary to constitute him an employee under sec. 102.07 (1), Stats. He had voluntarily entered upon and was performing that work, without any appointment or contract with the village. He was not obliged to enter upon or continue with the work. The village was under no obligation to accept or keep him at work, or to compensate him therefor; and no such compensation was either received or expected by him. As there existed between them no express or implied obligation whatever on the part of either, there was no such relationship as is essential to constitute the status of employee and employer in order to render the latter liable for compensation within the meaning of the compensation act."

In the case at bar Nelson had not been indigent or receiving relief because of incapacity on his part to work. On the contrary, his application to the county, upon the termination of his private employment and his inability to obtain such employment, was for work. Although the county might have been obliged to give him relief under sec. 49.01, Stats., if he had applied therefor, that was not what the county chose to do. Instead it chose to offer and give employment to indigents not incapacitated, and thus prevent them from standing in need of relief; and he chose to apply for and accepted such employment. Under those circumstances, his · status was not merely that of a recipient of relief. Instead, he was an employee of the county under the rule that,—

"The relation of employer and employee exists where one, performing work for another, does so under a contract express or implied which compels the one performing to do work under the control of the employer and at the same time gives to the employer the right to direct the other's conduct, to dismiss him from the service, and to have at all times authoritative control over the work." (*Neitzke v. Industrial Comm.* 208 Wis. 301, 303, 242 N. W. 163.)

Moreover, the work which he was employed to do was not mere "made-work" or a purely relief project. Regardless of relief, the county had to obtain and cut wood for its use in

heating its buildings and provide fuel for indigents supported by it under sec. 49.01, Stats. In addition, the county sold some of the cut wood to private parties, and received the proceeds therefor. Furthermore, Nelson was paid a wage which he could spend where and as he saw fit, as long as he paid for his necessities. Although his maximum hours were calculated to enable him to earn sufficient for his family-budget needs, if he had a surplus, after paying for his necessities, he could use it otherwise. Inasmuch as his employment was not to do mere "made-work," and he was working for a wage under at least an implied contract of hire, the principles applied in *Marathon County v. Industrial Comm.* 218 Wis. 275, 260 N. W. 641, and 225 Wis. 514, 272 N. W. 374, 275 N. W. 437, are applicable. See also *Industrial Comm. of Ohio v. McWhorter,* 129 Ohio St. 40, 193 N. E. 620, 96 A. L. R. 1150; *Gilroy v. Mackie* (1909), 46 Scot. L. R. 325.

*By the Court.*—Judgment affirmed.