CITY OF MADISON, Respondent, vs. DANE COUNTY, Appellant.

*October 10—November 8, 1940.*

*Norris E. Maloney,* district attorney, for the appellant.

For the respondent there was a brief by *Doris E. Lehner,* assistant city attorney, attorney, and *Harold E. Hanson,* city attorney, of counsel, and oral argument by *Miss Lehner* and by *Mr. Howard M. Buenzli,* assistant city attorney.

MARTIN, J. The parties have stipulated that the rates of tuition and the method of computation are correct, and that the children named in the six separate causes of action attended the plaintiff's schools in the different grades and for the periods of time alleged. It is further stipulated that the county system of poor relief as provided for in sec. 49.15, Stats., was in force in Dane county during all of the times in question. The facts as found by the trial court in each of the six causes of action are in accord with and fully sustained by the stipulated facts. In each cause of action the trial court found that the children therein named were poor persons and were supported as paupers at public expense during the different periods of time as alleged in each separate cause of action. In only one cause of action (the fourth) did the child in question have a legal settlement, as defined in sec. 49.02, in the city of Madison. In the sixth cause of action the child therein named had no legal settlement in any municipality in the state of Wisconsin during the time for which tuition is claimed. In the other causes of action, the children in question had legal settlements in different townships and villages in Dane county, in which townships and villages and in all of Dane county, the county system of poor relief was in effect. Some of the children attended the grades, others

the high school, and in one or two instances, one or two children attended kindergarten. All the children were of legal school age, that is, between the ages of four and twenty years.

Appellant county contends that the court erred, (1) in holding that a child whose father is employed on WPA is a "person of school age maintained as a public charge;" (2) in holding that a child whose father is employed on WERA work program is a "person of school age maintained as a public charge;" (3) in holding that a child whose father is employed on either WPA or WERA and also receives supplementary direct relief is a "person of school age maintained as a public charge;" (4) in holding that Dane county should be charged for tuition for a child having a legal settlement in the city of Madison while the county was on the "county system" of relief; (5) in holding that the plaintiff city could collect tuition costs from Dane county for attendance in Madison schools in any grade other than the first eight grades or the so-called common school grades; and (6) in holding that a child is a person "maintained as a public charge" when his father applies for and receives relief for himself and his family which is charged to the father.

Plaintiff's action is based upon sec. 40.21 (2), Stats. The period in question is from 1933 to April 1, 1938, during all of which time the county system of relief was in force, and therefore, sub. (2) of sec. 40.21, Stats. 1933, 1935, and 1937, are applicable.

Sec. 40.21 (2), Stats. 1933, provides:

"*Indigent pupils, tuition.* Every person of school age maintained as a public charge shall, for school purposes, be deemed a resident of the district in which he lives, and if maintained by the county the county board shall annually allow to the district in which such person attended school, a *pro rata* share of the year's expense of maintaining the school, such share to be computed upon the basis of the total enrollment, and in case such person be maintained by the town, such town board shall allow a like amount to such district."

Sec. 40.21 (2), Stats. 1935, provides:

"*Indigent pupils, tuition.* Every person of school age maintained as a public charge shall for school purposes be deemed a resident of the school district in which he resides, except that such school district shall be compensated by the municipality or by the county in case the county system of poor relief is in effect in such municipality in which such person of legal school age had a legal settlement as defined in section 49.02 with an amount equal to the *pro rata* share of the year's expense of maintaining such school, based upon the total enrollment and year's expense of the maintenance of such school. In case such person maintained by the county has his legal settlement outside the county, then the county shall pay such school district's *pro rata* share and such county may recover such sums paid, from any municipality in the state where the legal settlement may be established."

Sec. 40.21 (2), Stats. 1937, is identical with that of 1935.

The stipulated facts in each cause of action show that the children in question and their parents were on relief for some period of time prior to the time for which tuition is claimed. They further show that during the period for which tuition is claimed, application was made by the head of the family, the father, in each instant, to the Dane county outdoor relief department for public aid. The father of the children, in each instant, stated that said children were totally dependent upon him, and that he had no property, real or personal, of any kind, character, or description. The public assistance granted was based upon the needs of, and for the use and support of, the children and their parents.

To obtain work relief under the WPA (except the administrative and supervisory force) the applicant was required to show that he or she, as the case might be, was without other means of support, that is, that the applicant was not certified for work relief until he was a public indigent in actual need of relief. All of the children in question who resided in the city of Madison's school district for the period for which tuition is claimed, were supported by direct poor relief entirely

or by a combination of WPA work relief supplemented by direct poor relief by Dane county. Since the facts as to the nature and the extent of the relief in each instance are stipulated, we need only consider the application of the law to the agreed statement of facts which are embodied in the court's findings.

The city contends that a child or children so supported is maintained as a public charge within the meaning of sec. 40.21 (2) of the statutes. The phrase "public charge" means a person for whom support and care are provided at the expense of the public. 50 C. J. p. 852, § 19. The appellant county concedes that all persons involved in this action who were employed on WPA obtained their employment after the Dane county outdoor relief department *had certified that they were in actual need* at the time of such certification. But appellant argues that the mere fact that such employees were in actual need or might otherwise have required direct relief had not employment been given, does not alter the employee-employer relationship while said persons were so employed on WPA projects. In this connection appellant relies on the case of *Lincoln County v. Industrial Comm.* 228 Wis. 126, 279 N. W. 632. That case involved the right of an injured workman to compensation under the compensation act. The case is clearly distinguishable from the facts in the instant case. There Nelson, the injured person, who was awarded compensation, was not an indigent or the recipient of relief. He was a railroad employee who had been laid off on October 3, 1937. On or about November 1st of that year, he applied for work on the county wood lot which he understood was available to unemployed able-bodied men. A work card was issued to him to work for the county for a period of two weeks. Up to the time of his injury he had put in a total of thirty hours' work under the supervision and control of the foreman of the wood lot. During this time Nelson and the other men were engaged in cutting wood for the county

for use in heating the county buildings, for distribution to relief recipients, and it appears that the county sold the surplus of the cut wood to private parties. At page 130, in affirming the award of compensation to Nelson, the court said:

"Moreover, the work which he [Nelson] was employed to do was not mere 'made-work' or a purely relief project. Regardless of relief, the county had to obtain and cut wood for its use in heating its buildings and provide fuel for indigents supported by it under sec. 49.01, Stats. In addition, the county sold some of the cut wood to private parties, and received the proceeds therefor. Furthermore, Nelson was paid a wage which he could spend where and as he saw fit, as long as he paid for his necessities. Although his maximum hours were calculated to enable him to earn sufficient for his family-budget needs, if he had a surplus, after paying for his necessities, he could use it otherwise. Inasmuch as his employment was not to do mere 'made-work,' and he was working for a wage under at least an implied contract of hire, the principles applied in *Marathon County v. Industrial Comm.* 218 Wis. 275, 260 N. W. 641, and 225 Wis. 514, 272 N. W. 374, 275 N. W. 437, are applicable."

The facts in the instant case are quite similar to those in the case of *West Milwaukee v. Industrial Comm.* 216 Wis. 29, 255 N. W. 728, as to the relationship between the relief worker and the municipality by whom relief was furnished. In that case Yunker, the injured person, was a resident of West Milwaukee, and had received relief and support for himself and his family from Milwaukee county under ch. 49, Stats., from October, 1932, until he died in August, 1933. Milwaukee county had adopted the county system of poor relief in accordance with sec. 49.15, Stats., and therefore it was obliged to provide for Yunker and his family as long as they remained public charges. It furnished supplies and so forth to Yunker at a monthly expense of $27.16, and he was not required to do any work in return. In October, 1932, the county adopted a program for made-work for men who were

receiving relief. Its purpose was to give men who had been receiving relief, which the law required the county to provide, an opportunity to work if they wanted to. It appears that West Milwaukee made a request for the services of forty men from the county relief rolls to voluntarily work on public projects in that village. Yunker filed a request with the county relief department to work under that program. He received an identification slip which stated his eligibility to work as one of the forty men requested by the village of West Milwaukee. At first he worked forty hours per month, which was later increased to forty-eight. He was fatally injured while engaged in this work in July, 1933. It appears that he was not to receive and did not receive anything from West Milwaukee, but received $20 a month from Milwaukee county when he worked forty hours, and $24 a month when he worked forty-eight hours. The difference between those amounts and the $27.16 (which he had theretofore been receiving from Milwaukee county) he continued to receive from the county in supplies as needed by his family.

At page 32 the court said:

"So far as the county is concerned, he remained a public charge and was not taken off of the relief list. He could have refrained from working and could have continued to receive his budgeted necessaries, which the county was still bound by law to furnish, instead of receiving part of his relief in cash upon voluntarily doing 'made-work.'"

And at page 33 the court said:

"So far as the county is concerned, Yunker was merely one of the recipients of its public charity and, under those circumstances, liability to be paid by the county is wholly foreign to the spirit, as well as the letter of the compensation act."

The court held that he was not entitled to compensation from either the county or the village of West Milwaukee under the compensation act. If Yunker and his family re-

mained public charges on Milwaukee county, we think it clear that the children in the instant case, during the periods for which tuition is claimed, as well as the parents of said children, were maintained as public charges within the meaning of sec. 40.21 (2), Stats.

Dane county, in granting relief to the families involved in the several causes of action, did so under sec. 49.15 of the statutes, which said section at all times in question provided:

"*Adoption of county system.* The county board of any county may, at an annual meeting or at a special meeting called for that purpose, by a resolution adopted by an affirmative vote of a majority of all the supervisors entitled to a seat in such board, abolish all distinction between county poor and town, village and city poor in such county and have the expense of maintaining all the poor therein a county charge; and thereupon the county shall relieve and support the poor in said county. . . ."

We think it clear that the words "indigent pupils" and the phrase "maintained as a public charge" as used in sec. 40.21 (2), Stats., means children supported on relief under ch. 49, Stats. The attorney general of Wisconsin has consistently held that "maintained as a public charge" in sec. 40.21 (2) embraces a child supported by poor relief. 16 Op. Atty. Gen. 570; 20 Op. Atty. Gen. 742; 22 Op. Atty. Gen. 3; 23 Op. Atty. Gen. 252; 24 Op. Atty. Gen. 49; 27 Op. Atty. Gen. 290; 27 Op. Atty. Gen. 326; 28 Op. Atty. Gen. 586, 587. In the latter opinion the attorney general said:

"It is our opinion that the subsection in question comprehends relief furnished to a family of which a child is a member and in which the child participates. It is not limited to any form of public support extended directly to a child, if there be any such form of support. The subsection specifically refers to local and county systems of 'poor relief.' It refers as well to the provisions of sec. 49.02, Stats., relating to the place of legal settlement as it may apply to liability of local units for furnishing poor relief. The only poor relief with which we are familiar is that provided for by ch. 49, Stats.,

and such relief in no wise embraces aid to dependent children, the blind, the aged, or other forms of public assistance. It is, of course, quite clear that a minor of school age, who is at the same time a member of a family receiving poor relief, and who participates in the receipt of that relief, is a public charge."

Under assignment of errors (1), (2), and (3), appellant contends that the children in question were not maintained as public charges because the father in each instance was employed on WPA or WERA, or some other form of work relief project. In this connection, it is important to note that sec. 6 of ch. 363, Laws of 1933, provides:

"Relief shall include such money, food, housing, clothing, fuel, light, water, medicines, medical and other treatment, nursing, and such other care, service, household equipment and commodities as shall be reasonable and necessary under the circumstances. *It shall also include wages paid in cash or in kind for public work provided to dependent persons where the amounts paid are determined upon the basis of actual need* and where the conditions prescribed in subsection (2) of this section are observed."

Work relief, though wages therefor be paid in cash and are determined upon the basis of the family's actual need, constitutes maintenance of the family as a public charge. *West Milwaukee v. Industrial Comm., supra.* Wages paid by a city, town, or county, from money specifically appropriated for the purpose of relief, or from money provided by the federal government or any agency thereof, to persons unemployed or whose employment is inadequate to provide the necessities of life, constitutes work relief. *Manning v. State* (1937), 123 Conn. 504, 507, 196 Atl. 777; *In re Matruski* (1938), 169 Misc. 316, 8 N. Y. Supp. (2d) 471, 479. Upon the stipulated facts, we think the trial court correctly found that all the children in question during the different periods for which tuition is claimed, were poor persons and were supported as paupers at public expense.

It is next claimed that the court erred in holding that Dane county could be charged for tuition for a child having a legal settlement in the city of Madison while the county was on the "county system" of relief. As to this assignment of error, the applicable statute is sub. (2) of sec. 40.21, Stats. 1933, 1935, and 1937, which are quoted above. The language is clear and unambiguous. It is the court's duty to give full effect to the legislative intention as therein expressed. *State ex rel. Karnes v. Board of Regents,* 222 Wis. 542, 552, 269 N. W. 284. The child referred to under this assignment of error was a boy of school age. Like the rest of the children, he was an indigent pupil. Though his legal settlement was in the city of Madison, under the county system of poor relief, the county is liable for his tuition.

It is next asserted that the court erred in holding that the city could collect tuition costs from the county for attendance in Madison schools in any grades other than the first eight grades—the so-called common-school grades. It appears from the stipulated facts and the findings that some of the indigent pupils attended high school, one or two others attended kindergarten, and they were all between the ages of four and twenty years of age. Sec. 40.21 (2), Stats., provides that every person of school age maintained as a public charge shall, for school purposes, be deemed a resident of the school district in which he resides. Here there is no limitation as to grades or kindergarten. Sec. 3 of art. X of the Wisconsin constitution provides:

"The legislature shall provide by law for the establishment of district schools, which shall be as nearly uniform as practicable; and such schools shall be free and without charge for tuition to all children *between the ages of four and twenty years.* . . ."

A district school may maintain both kindergarten and high-school grades. The age limit implies both kindergarten and high-school pupils. Sec. 40.21 (4), Stats., per-

mits the admission of adult pupils above twenty years of age to the district schools when in the judgment of the school board they will not interfere with the pupils of school age. Sec. 40.13 (1), relating to school census, provides:

"(1) The district clerk shall during each July, make and transmit to the county superintendent, a verified report as of the thirtieth day of June of such year, showing:

"(a) The names and ages of children over the age of four and under the age of twenty years residing in the district. . . .

"(b) The whole number of children between said ages taught in the district school during the last year.

"(c) The number attending school during that year under the age of four and the number over the age of twenty years. . . ."

Sec. 40.53 (2), Stats., provides that the school board shall have the power to establish and organize such high schools, elementary schools, night schools, and kindergartens as it shall deem expedient. Sec. 40.21 (2m), Stats. 1933, 1935, and 1937 provides:

"The elementary and high-school tuition of every person of school age, excepting county charges, as provided in subsection (2) of this section, residing in a county institution shall be paid by the county. . . ."

This subsection is under the general heading "Conduct of Common Schools." None of the children involved in this action resided at a county institution. The subsection includes both elementary and high school, and provides that the tuition shall be paid by the county for every person of school age. It refers to indigent pupils. We think the only limitation under sec. 40.21 (2), Stats., is that of "legal school age" rather than any particular grade.

It is next contended that the court erred in holding that a child is the person "maintained as a public charge" when his father applies for and receives relief for himself and his family which is charged to the father. What has been said with refer-

rence to the first three assignments of error is applicable here. Both the children and their parents were on relief. The public assistance granted was based upon the needs of, and for the use and support of, the children and their parents. It is clear that the children were maintained as public charges within the letter and spirit of sec. 40.21 (2), Stats. To interpret the statutes otherwise would render them meaningless.

The application for relief, made in each instance by the father, shows the respective families involved in this action were in destitute circumstances. They had all been on public relief for some time prior to the time for which tuition is claimed. None of the children had any property or means of their own. They were totally dependent upon their fathers. They were all dependent upon public relief. Whether the assistance rendered to the respective families was through work relief, direct relief, or a combination of both, it provided those in question with maintenance as public charges. It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.